No. 24-1743

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

ALEXANDRE ANSARI,

Plaintiff-Appellee,

v.

MOISES JIMENEZ,

Defendant-Appellant.

On Appeal from the United States District Court
for the Eastern District of Michigan
Case No. 2:20-cv-10719, Hon. Stephen J. Murphy, III

**DEFENDANT-APPELLANT JIMINEZ'S BRIEF ON APPEAL**

**CERTIFICATE OF COMPLIANCE**

**CERTIFICATE OF SERVICE**

PLUNKETT COONEY

By:  MARY MASSARON (P43885)
    COURTNEY LAVENDER (P85614)
    Attorneys for Appellant
    38505 Woodward Avenue, Suite 100
    Bloomfield Hills, MI 48304
    (313) 983-4801

**CORPORATE DISCLOSURE STATEMENT**

Under Sixth Circuit Rule 26.1, Defendant-Appellant, Moises Jimenez makes these disclosures:

1.      Is said party a subsidiary or affiliate of a publicly owned corporation?

*No.*

2.      Is there a publicly owned corporation, not a party to the appeal that has a financial interest in the outcome?

*No.*

Dated:      February 21, 2025          */s/Mary Massaron*_____
                                        MARY MASSARON

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ..............................................................ii

TABLE OF CONTENTS ......................................................................................iii

TABLE OF AUTHORITIES ....................................................................................vi

STATEMENT IN SUPPORT OF ORAL ARGUMENT ..............................................xii

JURISDICTIONAL STATEMENT ........................................................................... 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ...................................... 2

STATEMENT OF THE CASE ................................................................................. 3

SUMMARY OF ARGUMENT................................................................................. 11

STANDARD OF REVIEW ..................................................................................... 14

ARGUMENT I...................................................................................................... 16

    THE *HECK* DOCTRINE BARS JIMENEZ'S CLAIM BECAUSE IT WOULD
    NECESSARILY IMPLY THE INVALIDITY OF HIS CONVICTION BUT NO VALID
    TRIBUNAL HAS SET IT ASIDE OR VACATED IT ...................................... 16

A.  *HECK* AND *PREISER* REQUIRE STATE COURT CONVICTIONS TO BE
    CHALLENGED THROUGH HABEAS PROCEEDINGS OR BY PROCEEDINGS
    BEFORE A VALID STATE TRIBUNAL AUTHORIZED TO DECLARE A
    CONVICTION INVALID ........................................................................... 16

B.  ANSARI DELIBERATELY CIRCUMVENTED PROPER PROCEDURES UNDER
    FEDERAL AND STATE LAW AND THUS CANNOT SHOW THAT HIS
    CONVICTION WAS SET ASIDE OR VACATED BY A WRIT OF HABEAS CORPUS
    OR DECLARED INVALID BY A STATE TRIBUNAL AUTHORIZED TO MAKE
    THAT DETERMINATION ......................................................................... 19

ARGUMENT II ..................................................................................................... 28

    IN THE ALTERNATIVE, ANSARI FAILED TO SHOW CLEARLY ESTABLISHED
    LAW THAT WOULD HAVE TOLD JIMENEZ HE WAS VIOLATING
    *BRADY/GIGLIO*'S MANDATORY DISCLOSURE REQUIREMENTS............................. 28

A.  QUALIFIED IMMUNITY PROTECTS AN OFFICER UNLESS EVERY
    REASONABLE OFFICER IN HIS SITUATION WOULD HAVE KNOWN THAT
    THE CONDUCT WAS UNLAWFUL ............................................................. 28

B.  CLEARLY ESTABLISHED LAW MUST BE BASED ON SUPREME COURT OPINIONS .......................................................................................... 29

C.  EVEN UNDER THIS CIRCUIT'S MORE RELAXED STANDARD, JIMENEZ DID NOT VIOLATE A CLEARLY ESTABLISHED RIGHT. ................................. 31

D.  UNDER ANY DEFINITION OF CLEARLY ESTABLISHED LAW, THE ANALYSIS MUST BE PARTICULARIZED IN TERMS OF THE FACTS .......................... 32

E.  A *BRADY/GIGLIO* CLAIM REQUIRES THE PLAINTIFF TO SHOW THAT THE GOVERNMENT WITHHELD EVIDENCE THAT FAVORS THE ACCUSED BECAUSE IT WAS EXCULPATORY OR IMPEACHING, WAS MATERIAL TO THE CRIMINAL DEFENDANT'S GUILT OR INNOCENCE, WAS ADMISSIBLE, AND A REASONABLE PROBABILITY EXISTS THAT, IF DISCLOSED, THE RESULT OF THE PROCEEDING WOULD HAVE BEEN DIFFERENT ................................ 33

F.  ANSARI FAILED TO MEET HIS BURDEN TO SHOW CLEARLY ESTABLISHED LAW IN THE PARTICULAR CIRCUMSTANCES THAT THE EVIDENCE JIMENEZ PURPORTEDLY WITHHELD HAD TO BE DISCLOSED UNDER *BRADY* OR *GIGLIO* ........................................................................................... 37

ARGUMENT III ...................................................................................... 48

IN THE ALTERNATIVE, JIMENEZ IS ENTITLED TO A NEW TRIAL BECAUSE THE DISTRICT COURT RULINGS INDIVIDUALLY AND CUMULATIVELY DEPRIVED HIM OF HIS SUBSTANTIAL RIGHTS TO A FAIR TRIAL .......................... 48

A.  THE DISTRICT COURT ERRONEOUSLY EXCLUDED KEY EVIDENCE SUPPORTING JIMENEZ'S POSITION .......................................................... 48

B.  THE DISTRICT COURT ERRONEOUSLY ALLOWED ONLY A PORTION OF PROSECUTOR TUSAR'S INTERNAL MEMO INTO EVIDENCE .................................. 51

C.  THE VERDICT FORM FAILED TO TELL THE JURY THAT THE ONLY BASIS FOR A VERDICT ON ANSARI'S *BRADY/GIGLIO* CLAIM WAS IF THE JURY FOUND THAT JIMENEZ WITHHELD EXCULPATORY OR IMPEACHING EVIDENCE FROM THE PROSECUTOR AND NOT A FAILURE TO ADEQUATELY INVESTIGATE ...................................................................................... 54

D.  THE DISTRICT COURT ERRONEOUSLY REFUSED TO INSTRUCT THE JURY THAT ATTORNEY CONTACT WITH WITNESSES IS NOT WRONG .......................... 62

E.  ANSARI'S LAWYER'S IMPROPER ARGUMENT DURING CLOSING DENIED JIMENEZ A FAIR TRIAL .......................................................................... 64

RELIEF .......................................................................................................... 68

CERTIFICATE OF COMPLIANCE ...................................................................... 69

CERTIFICATE OF SERVICE .............................................................................. 70

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ........................ 71

REPRODUCTION OF STATUTES, RULES, AND
     REGULATIONS UNDER FRAP 29(F) .................................................. 74

# TABLE OF AUTHORITIES

## Cases

*Adams v. Morris*,
90 Fed. App'x 856 (6th Cir. 2004) ................................. 17

*Anderson v. Creighton*,
483 U.S. 635 (1987) ................................................. 29

*Ashcroft v. al–Kidd*,
563 U.S. 731 (2011) ........................................29, 32, 33

*Beard v. Norwegian Caribbean Lines*,
900 F.2d 71 (6th Cir. 1990) ........................................ 54

*Beck v. Hamblen County, Tennessee*,
969 F.3d 592 (6th Cir. 2020) ....................................... 32

*Bell v. Bell*,
512 F.3d 223 (6th Cir. 2008) ....................................... 34

*Brady v. Maryland*,
373 U.S. 83 (1963)...................................................
................................xi, 2, 8, 11, 12, 25, 31, 33, 34, 35, 36, 37, 40, 43, 46, 47, 54, 55

*Bridgeport Music, Inc. v. Justin Combs Pub.*,
507 F.3d 470 (6th Cir. 2007) ....................................... 64

*Brosseau v. Haugen*,
543 U.S. 194 (2004) ................................................. 33

*Burkhart v. Randles*,
764 F.2d 1196 (6th Cir. 1985) ...................................... 54

*Cairel v Alderden*,
821 F.3d 823 (7th Cir. 2016) ....................................... 42

*Carroll v. Carman*,
574 U.S. 13 (2014) .................................................. 30

*Chaney-Snell v. Young*,
98 F.4th 699 (6th Cir. 2024) ....................................... 18

*Cincinnati Fluid Power, Inc. v. Rexnard, Inc.*,
797 F.2d 1386 (6th Cir. 1986) ...................................... 54

*City of Escondido v. Emmons*,
139 S. Ct. 500 (2019)...........................................28, 30

*City of Tahlequah, Oklahoma v. Bond*,
142 S. Ct. 9 (2021) ................................................. 29

*Coe v. Bell*,
161 F.3d 320 (6th Cir. 1998) ....................................... 62

*Coleman v. Thompson*,
501 U.S. 722 (1991) ................................................. 18

*Craddock v. FedEx Corporate Services, Inc.*,
  102 F.4th 832 (6th Cir. 2024) ............................................... 54

*Davenport v. Causey*,
  521 F.3d 544 (6th Cir. 2008) ................................................ 14

*District of Columbia v. Wesby*,
  583 U.S. 48 (2018) ............................................................... 29

*Doan v. Carter*,
  548 F3d 449 (6th Cir. 2008) ................................................. 33

*E.E.O.C. v. New Breed Logistics*,
  783 F.3d 1057 (6th Cir. 2015) .............................................. 14

*Eagan v. CSX Transp., Inc.*,
  271 F.Supp.993 (E.D. Mich. 2033) ...................................... 64

*Estelle v. McGuire*,
  502 U.S. 62 (1991) ............................................................... 62

*Fisher v. Ford Motor Co.*,
  224 F.3d 570 (6th Cir. 2000) ................................................ 15

*Fox v Board of Regents of University of Michigan*,
  375 Mich 238; 134 N.W.2d 146 (1965) ................................ 26

*Giglio v. United States*,
  405 U.S. 150 (1972) ............................... xi, 2, 12, 34, 36, 37, 40, 46, 47, 55

*Gumm v. Mitchell*,
  775 F.3d 345 (6th Cir. 2014) ................................................ 35

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982) ............................................................. 28

*Hayward v. Cleveland Clinic Found.*,
  759 F.3d 601 (6th Cir. 2014) ................................................ 17

*Hogan v. Hanks*,
  97 F.3d 189 (7th Cir. 1996) .................................................. 34

*Holmes v. City of Massillon*,
  78 F.3d 1041 (6th Cir. 1996) ................................................ 14

*Imbler v. Pachtman*,
  424 U.S. 409 (1976) ............................................................. 34

*In re Air Crash Disaster*,
  86 F.3d 498 (6th Cir. 1996) .................................................. 15

*Irick v. Bell*,
  636 F.3d 289 (6th Cir. 2019) ................................................ 22

*Jalowiec v. Bradshaw*,
  567 F.3d 293 (6th Cir. 2011) ........................................... 18, 34

*Jean v. Collins*,
   221 F.3d 656 (4th Cir. 2000) ................................................................... 47

*Jells v. Mitchell*,
   538 F.3d 478 (6th Cir. 2008) ................................................................... 18

*Jones v. Clark County, Kentucky*,
   959 F.3d 748 (6th Cir. 2020) ................................................................... 14

*Kisela v. Hughes*,
   138 S. Ct. 1148 (2018) ............................................................................. 30

*Malley v. Briggs*,
   475 U.S. 335 (1986) ............................................................................ 28, 29

*Matthews v. Ishee*,
   486 F.3d 883 (6th Cir. 2007) ................................................................... 34

*McNeill v. Bagley*,
   10 F.4th 588 (6th Cir. 2021) .................................................................... 35

*Michigan First Credit Union v. Cumis Insurance Society, Inc.*,
   641 F.3d 240 (6th Cir. 2011) ................................................................... 66

*Mitchell v. McNeil*,
   487 F.3d 374 (6th Cir. 2007) ................................................................... 61

*Moldowan v. City of Warren*,
   578 F.3d 351 (6th Cir. 2009) ........................................................ 4, 46, 47

*Mullenix v. Luna*,
   577 U.S. 7 (2015) ..................................................................................... 30

*Nolfi v. Ohio Kentucky Oil Corp.*,
   675 F.3d 538 (6th Cir. 2012) ................................................................... 15

*People v Washington*,
   508 Mich 107; 972 N.W.2d 767 (2021) ................................................... 26

*People v. Alexander Isaiah Ansari,*
   Michigan Court of Appeals Docket No. 318524,
   slip op. pp. 3-4, leave denied Supreme Court Docket No. 151379 ............ 11

*Preiser v Rodriguez*,
   411 U.S. 475 (1973) ............................................................................ 16, 26

*Reichle v. Howards,*
   566 U.S. 658 (2012) ................................................................................. 30

*Richardson v. Jackson Co.*,
   432 Mich. 377; 443 N.W.2d 105 (1989) .................................................. 19

*Richmond v. Mosley*,
   unpublished opinion Sixth Circuit No. 23-1643, Opinion ............. 18, 19, 26

*Rivas-Villegas v. Cortesluna*,
   142 S. Ct. 4 (2021) ............................................................................. 30, 33

*Robinson v. Jones*,
    142 F.3d 905 (6th Cir. 1998) ........................................................................ 14

*Sallier v. Brooks*,
    343 F.3d 868 (6th Cir. 2003) ........................................................................ 15

*Saucier v. Katz*,
    533 U.S. 194 (2001) .............................................................................. 14, 29

*Seales v. City of Detroit*,
    959 F.3d 235 (6th Cir. 2020) ........................................................................ 14

*Seymour v. Walker*,
    224 F.3d 542 (6th Cir. 2999) ........................................................................ 18

*Smith v. Cain*,
    565 U.S. 73 (2012) ...................................................................................... 35

*Stockdale v. Helper*,
    979 F.3d 498 (6th Cir. 2020) ........................................................................ 34

*Strickler v. Greene*,
    527 U.S. 263 (1999) .................................................................................... 33

*Sykes v. Anderson*,
    625 F.3d 294 (6th Cir. 2010) ..................................................................... 4, 46

*Thompson v. Clark*,
    142 S. Ct. 1332 (2022) ....................................................................14, 19, 26

*Turner v. United States*,
    582 U.S. 313 (2017) ..................................................................... 42, 43, 44

*Twachtman v. Connelly*,
    106 F.2d 501 (6th Cir. 1939) ........................................................................ 64

*U.S. v. Taylor*,
    471 Fed. Appx. 499 (6th Cir. 2012) ............................................................... 42

*United States v. Agurs*,
    427 U.S. 97 (1976) ................................................................................ 39, 42

*United States v. Bagley*,
    473 U.S. 667 (1985) ............................................................................... 33, 39

*United States v. Douglas*,
    634 F.3d 852 (6th Cir. 2011) ........................................................................ 33

*United States v. Gaitan-Acevedo*,
    148 F3d 577 (6th Cir. 1998) ........................................................................ 50

*United States v. Jones*,
    107 F.3d 1147 (6th Cir. 1997) ...................................................................... 49

*United States v. Modena*,
    302 F.3d 626 (6th Cir. 2002) ........................................................................ 66

*United States v. Ogden*,
   685 F.3d 600 (6th Cir. 2012) ............................................................. 35
*United States v. Philip*,
   948 F.2d 241 (6th Cir. 1991) ............................................................. 45
*White v. Pauly*,
   580 U.S. 73, 137 S. Ct. 548 (2017) ................................................... 33
*Wilson v. Layne*,
   526 U.S. 603 (1999) ............................................................................ 32
*Woganstahl v. Mitchell*,
   668 F.3d 307 (6th Cir. 2012) ............................................................. 36
*Wood v. Bartholomew*,
   516 U.S. 1 (1995) ........................................................................... 36, 45
*Ziglar v. Abbasi*,
   137 S. Ct. 1843 (2017) ........................................................................ 29

**Statutes**

18 U.S.C. § 3599(a)(2) .............................................................................. 21
28 U.S.C. § 1291 .......................................................................................... 1
28 U.S.C. § 1331 .......................................................................................... 1
28 U.S.C. § 1343 .......................................................................................... 1
28 U.S.C. § 2254 ........................................................................................ 17
42 U.S.C. § 1983 ............................................................. 1, 3, 16, 18, 19, 30
42 U.S.C. § 1988 .......................................................................................... 3

**Other Authorities**

Brennan in Harvard Law School
   Occasional Pamphlet No. 9, 22-23 (1967) ....................................... xi
Jack B. Weinstein et al.,
   *Weinstein's Evidence Manual*, P 901 (a) at 901-919 (5th ed. 1996) ................. 49
Robert L. Stern, *Supreme Court Practice* (2002) .................................. xi

**Rules**

Fedederal Rule of Appellate Procedure 3 ................................................ 1
Fedederal Rule of Appellate Procedure 4 ................................................ 1
Federal Rule of Civil Procedure 50 ........................................................... 8
Federal Rule of Civil Procedure 50(b) .......................................... 1, 8, 14
Fedearl Rule of Civil Procedure 59 ........................................................... 1
Federal Rule of Evidence 106 ................................................................... 53
Federal Rule of Evidence 902 ................................................................... 49
Federal Rule of Evidence RE 608(b) ....................................................... 40
M.C.R. 1.109(D)(3) .................................................................................... 20

M.C.R. 6.502 .................................................................................................20, 22, 25, 26, 74
M.C.R. 6.502(A) ................................................................................................................ 20
M.C.R. 6.502(C) ................................................................................................................. 21
M.C.R. 6.502(D) ................................................................................................................ 21

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Defendant-Appellant Jimenez requests oral argument. This appeal involves a large money judgment against him on a *Brady/Giglio* constitutional claim. The record is huge, including transcripts from a mistrial, a lengthy trial, and multiple motion hearings, including a post-verdict hearing on Officer Jimenez's motion for judgment as a matter of law and his motion for a new trial, arguing Ansari (1) failed to satisfy *Heck v. Humphrey*'s requirement to show his conviction was lawfully invalidated and (2) failed to show clearly established law under *Brady v. Maryland* and *Giglio v. United States,* 405 U.S. 150, 154 (1972) that would have told Jimenez to turn over purportedly exculpatory and impeaching evidence.

Justice Brennan has explained that "oral argument is the absolutely indispensable ingredient of appellate advocacy." Robert L. Stern, *Supreme Court Practice*, p. 671 (2002) quoting Brennan in Harvard Law School Occasional Pamphlet No. 9, 22-23 (1967). Counsel requests the chance to answer questions and try to persuade the Court at oral argument.

## Jurisdictional Statement

Alexandre Ansari sued the City of Detroit and Moises Jimenez alleging violations of 42 U.S.C. § 1983 claiming they violated his Fourth and Fourteenth Amendment rights. Complaint, RE 1, PageID.1-18. The district court accepted jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343 because Ansari raised federal questions.

Jimenez timely filed a notice of appeal on August 30, 2024, from the Judgment entered on April 2, 2024 and the Order Denying a Motion for New Trial and Denying the Renewed Motion for Judgment as a Matter of Law. Notice of Appeal, RE 190, PageID.1461. This Court has jurisdiction under F.R.A.P. 3 and 4 and 28 U.S.C. § 1291 because the notice was filed within thirty days of entry of the district court's orders denying the timely-filed motions under Rule 50(b) and 59.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

### I.

Is Jimenez entitled to judgment because the *Heck* doctrine bars this case?

### II.

Is Jimenez entitled to judgment because Ansari failed to show clearly established law that the information he claims Jimenez failed to disclose fell within *Brady/Giglio*'s mandatory disclosure requirements?

### III.

In the alternative, is Jimenez entitled to a new trial because the district court reversibly erred in failing to adequately instruct the jury, using a verdict form that inadequately set forth the claim, and in making various other errors all of which individually and cumulatively deprived him of his substantial rights to a fair trial?

## STATEMENT OF THE CASE

Alexandre Ansari sued the City of Detroit and its police officer, Moises Jimenez, under 42 U.S.C. § 1983 and § 1988 for claimed violations of his constitutional rights under the United States Constitution's Fourth and Fourteenth Amendments. Complaint, RE 1, PageID.1-18. Ansari alleged that he would not have been arrested, bound over, and convicted at trial but for Jimenez's purported failure to disclose information about an alleged hit ordered by reputed drug dealer, Jose Sandoval. *Id.* at PageID.14. The City and Jimenez answered the complaint, denying liability and raising various affirmative defenses. Defendants' Answer, RE 6, PageID.27-48.

Litigation proceeded for several years with hotly contested motions concerning discovery and for summary judgment. *See, e.g.*, Jimenez's Motion for Summary Judgment, RE 59, PageID.866-1148. The district court granted Jimenez's motion for summary judgment on "the malicious prosecution claim and all but one Brady claim." Opinion and Order, RE 70, PageID.1519. The district court held that Jimenez had probable cause for Ansari's arrest based on eyewitness identifications and a composite sketch. *Id.* at PageID.1821. The district court determined that the arrest was based on Figueroa's identification, which was reliable. *Id.* at PageID.1822. The district court also concluded that the second tip matched the suspect with Ansari's name. *Id.* at

PageID.1822-1823. The district court reasoned that "the Sandoval evidence does not undermine the reliability of Figueroa's identification: it merely provides a motive for the shooting." *Id.* at PageID.1823. Thus, Jimenez had probable cause to charge Ansari. *Id.*

The district court denied summary judgment as to Ansari's claim insofar as it was based on Jimenez's purported failure to turn over the GPS tracking and cellphone data on Sandoval. *Id.* at PageID.1826. The district court incorrectly reasoned that the Sandoval evidence undermined the prosecutor's "theory of the case," and that the evidence would have impeached the credibility of several witnesses. *Id.* at PageID.1827. The district court also held that a fact question existed about whether the evidence was turned over. *Id.* at PageID.1827-1828.

The district court rejected Jimenez's argument that he was cloaked with qualified immunity, citing *Moldowan v. City of Warren*, 578 F.3d 351 (6th Cir. 2009) and *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010). In the district court's view, fact questions existed about whether a violation occurred.  The district court also concluded that the law was clearly established. *Id.* at PageID. 1829-1829. Jimenez sought reconsideration, which the district court denied. Motion for Partial Reconsideration, RE 71, PageID.1833-1863; Order, RE 72, PageID.1864-1867.

Jimenez later moved to dismiss based on *Heck v. Humphrey*, 512 U.S. 477 (1994). Motion to Dismiss for Lack of Subject Matter Jurisdiction, RE 75, PageID.1872-1972. The district court denied this motion. Order, RE 80, PageID.1974-1978. It agreed that Ansari's claims "would necessarily challenge his State court conviction and sentence." *Id.* at PageID.1977. But the district court concluded the second prong was not satisfied because the state court's conviction and sentence had been vacated. *Id.* at PageID.1977. Jimenez sought reconsideration. Motion for Reconsideration, RE 81, PageID.1979-1995. Jimenez pointed out that the stipulated order vacating Ansari's conviction and sentence was entered due to a settlement to which Jimenez was not a party, and that *Rooker-Feldman,* on which the district court had relied, did not bar the district court from determining whether the stipulated order entered by a state court was a lawful judgment. *Id.* at PageID.1992. The district court clarified its earlier ruling citing "the general principle of federalism," but denied the motion. Order, RE 83, PageID.1998-2001.

Then, the parties prepared for trial. Both parties filed motions in limine, which were decided in a series of omnibus opinions. Omnibus Opinion, RE 128, PageID.2903-2917; Opinion and Order, RE 129, PageID.2918-2923; Omnibus Opinion, RE 130, PageID.2924-2933. After several days of trial, the district court granted a mistrial. Order, RE 132, PageID.2956-2965. Ansari's

attorney moved for a mistrial because he contended that the district court had put its "thumb on the scale of credibility" when it chastised an obdurate witness, prosecutor Tusar, in front of the jury. *Id.* at PageID.2956. The district court explained that it would normally have denied Ansari's motion but because the witness was "disputatious and vexatious" giving answers that "obscured rather than clarified the truth," it was not error to correct her. *Id.* at PageID.2960.

Jimenez's lawyer sought a mistrial at almost the same time because Jimenez had received extensive "negative media attention… on a separate, highly publicized lawsuit filed against him." *Id.* Since the district court had no warning the other case would be filed during the trial causing extensive media coverage, he had not instructed the jury to avoid reading or watching news media. So the district court exercised its discretion to grant a mistrial. *Id.* at PageID.2963-2965.

Additional proceedings and a second trial took place. Jimenez argued that the order vacating Ansari's conviction was improperly entered in violation of Michigan court rules and procedures. Jimenez Trial Brief, RE 149, PageID.3511-3536. Jimenez again argued that Ansari failed to satisfy *Heck v. Humphrey*'s threshold requirement to show his conviction was lawfully vacated. *Id.* at PageID.3520-3527. Jimenez also contended that the verdict

form should ask "Did Defendant, Moises Jimenez, violate Plaintiff, Alexandre Ansari's, Fourteenth Amendment right to due process by withholding exculpatory evidence from the prosecutor?" *Id.* at PageID.3527. Jimenez pointed out that during the first trial, Ansari's lawyer had repeatedly told the jury that Ansari was not guilty, arguing that Jimenez failed to investigate his claimed innocence. Jimenez contended that neither the investigation nor Ansari's guilt or innocence were relevant; both topics were highly confusing and raised by Ansari's lawyer in violation of the court's in limine orders and opinions. *Id.* at PageID.3527-3534. Jimenez urged the district court to bar Ansari from presenting evidence or offering arguments about guilt or innocence. *Id.*

The district court issued another order addressing evidentiary matters. Amended Order on Evidentiary Matters, RE 158, PageID.3739-3740. The district court reiterated that testimony about Ansari's guilt or innocence should be excluded, allowed Jimenez to use additional portions of Ansari's criminal defense lawyer's deposition at trial, and ruled that the Wayne County Prosecutor's Office file would be received in evidence as self-authenticating under Federal Rule of Evidence 902(11) if Jimenez laid a proper foundation. *Id.* The district court later refused to admit the file but allowed the parties to

argue about it and present inferences they wished the jury to make. *Id.* at PageID.3739-3740.

At the close of Ansari's case-in-chief, Jimenez orally moved for judgment as a matter of law, which the district court denied. Order Denying Oral Motion for Directed Verdict by Defendant, RE 178, PageID.5132-5140 citing 2/13/24 Tr, RE 173, PageID.4876-4878. Judgment was later entered in Ansari's favor and against Jimenez for $10,000,000.00 in compensatory damages. Judgment, RE 179, PageID.5141.

Jimenez renewed his motion for judgment as a matter of law, Jimenez's Renewed Motion for Judgment as a Matter of Law, RE 181, PageID.5182-5304, and his motion for new trial. Jimenez's Motion for New Trial, RE 180, PageID.5143-5181. The district court denied both motions. Opinion and Order, RE 189, PageID.5512-5534. The district court rejected Jimenez's arguments, concluding that *Heck* did not bar Ansari's claims, holding that the *Brady* evidence was exculpatory, and rejecting Ansari's argument that it was not impeaching. *Id.* at PageID.5517-5518. The district court also concluded that fact questions existed about whether Jimenez had turned the information over to prosecutor Tusar. *Id.* at PageID.5518-5519. The district court rejected Jimenez's argument that he was protected with qualified immunity, citing its pretrial decision. *Id.* at PageID.5519-5521.

The district court also denied Jimenez's motion for a new trial. *Id.* at PageID.5521-5533. In doing so, the district court made gratuitous and inaccurate attacks on Jimenez's trial counsel that infected its denial of a new trial. *Id.* at PageID.5521-5534. For example, the district court said that "Defendant falsely claimed that the parties stipulated to an instruction regarding the propriety of attorney contact with a witness." *Id.* at PageID.5524. Yet Ansari's counsel had filed joint stipulated jury instructions that included the requested instruction, "Witness Who Has Been Interviewed by an Attorney." Jury Instructions, RE 153, PageID.3683. The district court ignored the stipulated instruction while citing the lawyers' discussion during trial. But there, Ansari's lawyer did *not* deny having stipulated to the instruction or explain his changed position; rather, he urged the trial court not to give the instruction and argued if given, an instruction on attorney ethics of speaking with a person represented by counsel be given as well. Opinion, RE 189, PageID.5524 citing Motion for New Trial, RE 180, PageID.5168-5169 and 2/13/24 Tr, RE 173, PageID.4950-52; 4956. The district court's opinion failed to cite the stipulated jury instructions, RE 153, PageID.3683 or to Ansari's lawyer's attack on defense trial counsel before the jury for purportedly violating ethics by talking with the prosecutor, 2/12/24 Tr, RE 171,

PageID.4550or to Jimenez's lawyer's argument about why the instruction was required. 2/15/24 Tr, RE 174, PageID.4972-4973.

Jimenez appealed the judgment to this Court. Notice of Appeal, RE 190, PageID.5535-5536.

**SUMMARY OF ARGUMENT**

Detective Moises Jimenez seeks reversal of a judgment against him.

Ansari was convicted and incarcerated for the murder of 15-year-old Ileana

Cuevas, and the attempted murder of two surviving victims, Rosalind Barley

and Miguel Figueroa. His criminal conviction was based solely on eye-witness

identifications by the surviving victims and others who identified Ansari.

*People v. Alexandre Isaiah Ansari,* Michigan Court of Appeals Docket No.

318524, slip op. pp. 3-4, leave denied Supreme Court Docket No. 151379.

Ansari failed to establish the threshold requirement that his conviction

was validly set aside by a tribunal with authority to do so under *Heck v.*

*Humphrey*, 512 U.S. 477 (1994). Ansari's claim is also barred by qualified

immunity because he failed to establish that Jimenez violated his clearly

established constitutional rights under *Brady v. Maryland*, 373 U.S. 83 (1963).

The purportedly undisclosed evidence that Ansari relied on to support his

claim included unsubstantiated, uncorroborated hearsay information about

Jose Sandoval, an alleged drug dealer rumored to have placed a $30,000

bounty on the victims because they allegedly stole heroin from him. This

information was not exculpatory but inculpatory since it would not have

shown Ansari's innocence; it would only have provided a possible motive.

Surviving victims identified Ansari as the shooter and knew about Sandoval

because of prior altercations with him. The prosecutor conceded that the charges against Ansari would have proceeded anyway based on the victims' identification.

No clearly established law would have extended the *Brady/Giglio* obligation to encompass this inculpatory evidence nor required Jimenez to disclose unsubstantiated rumors and uncorroborated tips. Ansari cited none, instead relying on the general principle that *Brady* established a disclosure obligation. That highly abstract argument is insufficient to show that the law was clearly established that Jimenez had to turn over the Sandoval evidence, which was only tenuously connected to the shooting by uncorroborated rumors and tips. As a result, Jimenez was entitled to judgment in his favor.

In the alternative, Jimenez seeks a new trial because of serious individual and cumulative errors in jury instructions, the verdict form, and evidentiary rulings that deprived him of his substantial rights to a fair trial. The district court's opinion and order denying Jimenez's renewed motion for judgment as a matter of law and motion for new trial reflects harsh and gratuitous attacks on Jimenez's lawyer that were factually unsupported and wrong based on the record. Opinion and Order, RE 189, PageID.5512-5534.

The district court's pique at Jimenez's lawyer for purportedly not settling the case and for objecting to jury instructions and taking other

appropriate steps on behalf of her client led to a series of adverse rulings that infected the fairness of the trial and its outcome. Thus, a reversal for a new trial is required.

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's decision to deny a renewed motion for judgment as a matter of law under Rule 50(b). *E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1065 (6th Cir. 2015); *Seales v. City of Detroit*, 959 F.3d 235, 240 (6th Cir. 2020).

This Court reviews a decision based on qualified immunity de novo. *Jones v. Clark County, Kentucky,* 959 F.3d 748, 765 (6th Cir. 2020) overruled on other grounds in *Thompson v. Clark*, 142 S. Ct. 1332 (2022). When the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate. *Saucier v. Katz*, 533 U.S. 194, 202 (2001)..

This Court's review of whether *Heck v. Humphrey*, 512 U.S. 477 (1994) bars a suit is de novo. *Davenport v. Causey*, 521 F.3d 544, 550 (6th Cir. 2008); *Robinson v. Jones*, 142 F.3d 905, 906 (6th Cir. 1998).

This Court reviews a district court's decision to deny a motion for a new trial under an abuse-of-discretion standard. *Holmes v. City of Massillon*, 78 F.3d 1041, 1045 (6th Cir. 1996). Reversal is in order when this Court has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors. *Holmes v City of Massillon*, Ohio, 78 F.3d 1041, 1045-1046.  Generally, a new trial is

warranted when a jury has reached a "seriously erroneous result" as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion. *Holmes,* supra at 1046 (citations omitted). Misconduct by an attorney may be the basis for a new trial but the party seeking the new trial bears the burden of showing prejudice. *In re Air Crash Disaster*, 86 F.3d 498, 524 (6th Cir. 1996).

This Court reviews the correctness of jury instructions *de novo,* but on appeal the standard is "whether the charge, taken as a whole, fairly and adequately submits the issues and applicable law to the jury." *Fisher v. Ford Motor Co.,* 224 F.3d 570, 575–76 (6th Cir. 2000); *Nolfi v. Ohio Kentucky Oil Corp.*, 675 F.3d 538, 548 (6th Cir. 2012). The reviewing court looks to see if "taken as a whole, they were misleading or provided an inadequate understanding of the law." *Sallier v. Brooks*, 343 F.3d 868, 880 (6th Cir. 2003).

## ARGUMENT I

**THE *HECK* DOCTRINE BARS JIMENEZ'S CLAIM BECAUSE IT WOULD NECESSARILY IMPLY THE INVALIDITY OF HIS CONVICTION BUT NO VALID TRIBUNAL HAS SET IT ASIDE OR VACATED IT**

**A.    *HECK* AND *PREISER* REQUIRE STATE COURT CONVICTIONS TO BE CHALLENGED THROUGH HABEAS PROCEEDINGS OR BY PROCEEDINGS BEFORE A VALID STATE TRIBUNAL AUTHORIZED TO DECLARE A CONVICTION INVALID**

In *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), the Supreme Court held that if a state prisoner's success in a 42 U.S.C. § 1983 suit for damages would "necessarily imply the invalidity of his conviction or sentence," then "the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 487, 114 S.Ct. 2364.

*Heck* specifically identified how a conviction must be set aside before a criminal defendant may ask federal courts to entertain a federal-law civil rights suit that calls his conviction into question. Congress "has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement, and that specific determination must override the general terms of § 1983." *Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973). The Supreme Court sought to limit federal civil rights actions to only those prisoners who had obtained a decision setting aside their convictions in specified ways. It did so to avoid

having 42 U.S.C. § 1983 become a vehicle by which prisoners would attack the validity of their state court convictions.

To accomplish this, *Heck* held that the plaintiff "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." 512 U.S. at 486-487. *See also Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 609 (6th Cir. 2014); *Adams v. Morris*, 90 F. App'x 856, 858 (6th Cir. 2004).

*Heck* reflects the Supreme Court's efforts to ensure that habeas corpus relief is the exclusive method by which persons seeking to vacate convictions or obtain new trials in federal courts can do so. *Preiser*, 411 U.S. at 476-477. Thus, *Heck* carefully limited a prisoner or former prisoner's right to seek damages under 42 U.S.C. § 1983 or to invalidate their conviction either directly or indirectly. *Kitchen v. Whitmer*, 108 F.4th 525, 538-539 (6th Cir. 2024). *Heck* sought to bar prisoners from attacking their convictions through federal civil rights suits. Thus, it specified only certain showings under state law satisfy the threshold element of a federal civil rights claim when success on that claim would necessarily undermine the validity of a state-court conviction.

This approach reflects principles of federalism, comity, and finality that bar a federal court from hearing an attack on a state court conviction unless the litigant adheres to the state court's appellate and collateral review procedures or follows procedures for federal habeas. *Heck* creates a precondition to a § 1983 suit. *Chaney-Snell v. Young*, 98 F.4th 699, 711 (6th Cir. 2024). Otherwise, suit is barred. *See Richmond v. Mosley*, unpublished opinion Sixth Circuit No. 23-1643, Opinion (Larsen, J)(Judges Kethledge and Bloomkatz concurring).

The federal courts have regularly analyzed state court orders and proceedings as part of this process. This analysis is required to make sure that federal courts are not drawn into litigation that undermines the state courts' procedures and law. *Heck*'s threshold element provides a safeguard to prevent federal courts from acting until the state courts have had the opportunity to apply the legal principles governing a claim that would cast doubt on the validity of the state court conviction. *See, e.g., Jalowiec v. Bradshaw*, 567 F.3d 293, 304 (6th Cir. 2011); *Coleman v. Thompso*n, 501 U.S. 722, 731-732, 750-751 (1991); *Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2999); *Jells v. Mitchell*, 538 F.3d 478, 504 (6th Cir. 2008). These exhaustion and preservation doctrines in the context of habeas review, like those in the context of suits

under 42 U.S.C. § 1983, preserve the careful balance needed for federal and state court comity and the proper functioning of the two judicial systems.

Ansari has not satisfied this threshold showing. Ansari can bring a damages claim in the future if he is able to show that his conviction has been set aside or vacated by a valid tribunal with authority to do so or if he obtains a writ of habeas corpus.  But in the meantime, his claims under Section 1983 are not cognizable. *Thompson v. Clark*, ___ U.S. ___ (2022); *Richmond*, *supra*.

**B.**   **ANSARI DELIBERATELY CIRCUMVENTED PROPER PROCEDURES UNDER FEDERAL AND STATE LAW AND THUS CANNOT SHOW THAT HIS CONVICTION WAS SET ASIDE OR VACATED BY A WRIT OF HABEAS CORPUS OR DECLARED INVALID BY A STATE TRIBUNAL AUTHORIZED TO MAKE THAT DETERMINATION**

Ansari argues that his suit satisfies *Heck* because he was released from prison based on entry of a stipulated order. But the stipulated order was a vehicle to circumvent both federal habeas proceedings and Michigan's mandatory proceedings – either of which would have resulted in the appropriate judicial review of the claimed grounds for setting aside the conviction. The stipulation is thus ultra vires and affords no basis for satisfying *Preiser* and *Heck*. Michigan courts have defined ultra vires acts as activities not expressly or impliedly mandated or authorized by law. *Richardson v. Jackson Co*., 432 Mich. 377, 381; 443 N.W.2d 105 (1989). Since no attorneys are empowered to set a convicted prisoner free by agreement

without the judicial oversight that arises from adhering to M.C.R. 6.502, that definition applies here.

M.C.R. 6.502 defines the mandatory procedure for seeking relief from a judgment of criminal conviction:

> **(A) Nature of Motion.** The request for relief under this subchapter must be in the form of a motion to set aside or modify the judgment. The motion must specify all of the grounds for relief which are available to the defendant and of which the defendant has, or by the exercise of due diligence, should have knowledge.
>
> ***
>
> **(C) Form of Motion.** The motion may not be noticed for hearing and must be typed or legibly handwritten and include a verification by the defendant or defendant's lawyer in accordance with M.C.R. 1.109(D)(3). .....
>
> **(D) Return of Insufficient Motion.** If a motion is not submitted on a form approved by the State Court Administrative Office or does not substantially comply with the requirements of these rules, the court shall either direct that it be returned to the defendant with a statement of the reasons for its return, along with the appropriate form, or adjudicate the motion under the provisions of these rules.

Under the rule, any request for relief from a judgment of conviction "*must* be in the form of a motion to set aside or modify the judgment." M.C.R. 6.502(A)(italics added). The word "must" means "an imperative need or duty: requirement." Merriam-Webster Dictionary, merriam-webster.com. The drafters underscored this imperative by specifying that information "must be

substantially in the form approved" and requiring court clerks to reject

motions that don't comply. M.C.R. 6.502(C) and (D).

The process Ansari used flouted state and federal requirements. On

September 1, 2016, Ansari filed a pro se habeas corpus suit in federal court.

Order Appointing Counsel for Petitioner, RE 75-3, PageID.1916-1917, *Ansari v.*

*Winn*, Eastern District of Michigan Case No. 16-cv-13179. The federal court

appointed counsel for him. *Id.* While the federal habeas suit was pending and

before it had been adjudicated, a stipulation and order adjourning disposition

of the case was entered by Judge Levy. USDC Civil Docket, RE 75-5,

PageID.1926.

Meanwhile, a stipulated order was presented to the state court. That

stipulated order was signed by two Wayne County Prosecutor's Office

Conviction Integrity Unit employees, Valerie Newman  and Carole Stanyer, and

two assistant federal defenders. Stipulated Order, RE 75-1, PageID.1908-1909.

*People v. Ansari*, Wayne County Circuit Court No. 12-010941. Neither federal

defender, Benton C. Martin or Colleen P. Fitzharris[1], were licensed to practice

---

[1] The two assistant federal defenders had been appointed by United States
District Court Judge Judith E. Levy to represent Ansari in the federal habeas
corpus matter that Ansari had filed under 18 U.S.C. § 3599(a)(2). Order
Appointing Counsel, RE 75-3, PageID.1916-1917. But they were not
authorized to represent him in state criminal proceedings since he already
had separate counsel. The statute under which they were appointed provides

in Michigan. Neither filed an appearance to represent Ansari in the state court criminal case and neither were appointed to do so by a state court. Jonathan B.D. Simon, Ansari's state-appointed appellate counsel when the stipulated order to vacate was entered, did not sign the stipulated order. Third Circuit Register of Actions, RE 75-2, PageID.1911-1914.

The stipulated order included none of the requisite findings based on the required record. It provided:

> This matter having been presented in open court through the stipulation of the parties, and the parties having agreed that newly discovered evidence, as well as the Wayne County Prosecutor's own investigation, warrants relief, and the Court being otherwise fully advised in the premises of said stipulation;
>
> IT IS HEREBY ORDERED that in the interests of justice, Alexandre Ansari's convictions and sentences in this matter are hereby vacated, and all related charges are hereby dismissed. Mr. Ansari shall be released from the Michigan Department of Corrections forthwith.

*Id.* The stipulated order was entered by the state court on March 15, 2019. *See also*, Register of Actions, RE 75-2, PageID.1911-1914. No motion for relief from the judgment was filed under M.C.R. 6.502. The stipulated order does not cite M.C.R. 6.502 or any other authority for the relief sought. Nor does it set

---

for counsel only when a state petitioner is unable to obtain adequate representation, which of course Ansari already had in state court. *Irick v. Bell*, 636 F.3d 289 (6th Cir. 2019).

forth what the purportedly "newly discovered evidence" was nor attach any report or documents from "the Wayne County Prosecutor's own investigation." Stipulated Order, RE 75-1, PageID.1908-1909. No finding was made that the evidence was newly discovered. Nor was any finding made about what Ansari's lawyers had previously raised in his state criminal proceedings or anywhere else.

Later, the federal district court dismissed the habeas action without prejudice. Stipulation and Order Dismissing Ansari's Petition, RE 75-4, PageID.1919-1922. It did so based on a stipulated order signed "with consent" by an assistant attorney general on behalf of the Respondent and by Martin and Fitzharris for Ansari. *Id.*

But that stipulated order inaccurately advised the federal judge that "Kym Worthy, the Wayne County Prosecutor, moved to vacate Mr. Ansari's judgment of conviction and sentence based on newly discovered evidence of actual innocence." *Id.* at ¶ 3. The state-court stipulation did not include any statement embodying a finding of "actual innocence." The stipulated order also misrepresented to Judge Levy that Wayne County Circuit Court Judge Thomas M.J. Hathaway had "granted the motion." *Id.* at ¶ 4. Judge Hathaway

did not grant a motion – no motion was ever filed.[2] Ansari's criminal case was reassigned to Judge Hathaway after the death of the judge who had presided over Ansari's criminal trials. Third Circuit Register of Actions, RE 75-2, PageID.1911-1914.

Allowing a prosecutor to stipulate to vacate a criminal conviction without even a hearing on the record before a judge with a court reporter and evidence from sworn witnesses gives a prosecutor enormous power. If this is upheld as valid by the federal courts, it would give a prosecutor more power than the governor's power to grant clemency. Section 14 of the Michigan Constitution of 1963 provides:

> The governor shall have power to grant reprieves, commutations and pardons after convictions for all offenses, except cases of impeachment, upon conditions and limitations as he may direct, subject to procedures and regulations prescribed by law. He shall inform the legislature annually of each reprieve, commutation and pardon granted, stating reasons therefor.

---

[2] Three submissions to federal court in Ansari's habeas suit were "SEALED" before the matter was dismissed. No motion to seal the documents was ever filed, the procedure for sealing was not followed, and no authority to seal submissions was presented as required by Local Rule 5.3. USDC Civil Docket for Ansari's Petition for Habeas Corpus, RE 75-5, PageID.1924-1927. Defendant moved to unseal the documents, but the motion was pending before Judge Levy when the *Heck* motion was filed in district court. So the record in this civil rights lawsuit does not reveal the basis for Ansari's habeas suit.

Unlike the procedures and regulations constraining the governor or the procedures required to succeed with a habeas action, and without complying with the mandatory procedures under state law in M.C.R. 6.502, lawyers from a prosecutor's conviction integrity unit agreed with two assistant federal defenders to release a duly convicted prisoner.

Ansari's claim presumes that his conviction was unlawful because Detective Jimenez violated his constitutional rights under *Brady v. Maryland*, 373 U.S. 73 (1963). Ansari agrees that he needs to show that his conviction was determined to be invalid under one of the procedures identified in *Heck*. But Ansari has not proved that his conviction was reversed on direct appeal; it was upheld by the Michigan Court of Appeals and Michigan Supreme Court. Ansari has not shown it was expunged by executive order or questioned by a federal court's issuance of a writ of habeas corpus. The federal court dismissed Ansari's petition for habeas relief after a stipulated order was presented to it inaccurately stating that the state court had granted a motion to vacate Ansari's petition.

Ansari has not proved that his conviction was "declared invalid by a state tribunal authorized to make" that determination. No state tribunal authorized to make that determination has declared that the conviction was invalid. Ansari points only to a conclusory stipulated order that was entered in

violation of Michigan court rules, with no finding of any of the grounds for vacating a conviction, no identification of newly-discovered evidence, and no finding of innocence. Stipulated Order Vacating Convictions and Sentences, RE 75-1, PageID.1908-1909. When a state court is without jurisdiction in a particular case, its acts and proceedings have no force of validity and are null and void. *Fox v Board of Regents of University of Michigan*, 375 Mich 238, 242; 134 N.W.2d 146 (1965); *People v Washington*, 508 Mich 107, 130; 972 N.W.2d 767 (2021). The mandatory nature of M.C.R. 6.502 means that a circuit court lacks jurisdiction, absent the proper motion.

The stipulated order entered without a motion under M.C.R. 6.502 was not enough under federal law for a civil rights claim to be cognizable under *Heck* and *Preiser*. Yet the district court accepted the stipulated order without analyzing whether it satisfied *Heck* and *Preiser*'s threshold requirements for suit. As in *Richmond v. Mosley*, unpublished opinion Sixth Circuit Docket No. 23-1643, 2024 WL 2862505, June 6, 2024, Ansari has failed to establish a genuine issue of material fact as to whether his convictions have been overturned by a valid state tribunal with authority to do so. His claims are not cognizable. *Thompson v. Clark*, 596 U.S. 36 (2022)(holding that *Heck* satisfied if the plaintiff can show that his criminal prosecution ended without a conviction). Unlike in *Thompson*, Ansari's prosecution did not end without a

conviction. Thus, the district court decision was in error and Ansari's claims should be dismissed without prejudice.

## ARGUMENT II

**IN THE ALTERNATIVE, ANSARI FAILED TO SHOW CLEARLY ESTABLISHED LAW THAT WOULD HAVE TOLD JIMENEZ HE WAS VIOLATING *BRADY/GIGLIO*'S MANDATORY DISCLOSURE REQUIREMENTS**

**A.      QUALIFIED IMMUNITY PROTECTS AN OFFICER UNLESS EVERY REASONABLE OFFICER IN HIS SITUATION WOULD HAVE KNOWN THAT THE CONDUCT WAS UNLAWFUL**

Qualified immunity "attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019). The Supreme Court's decision in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), established the applicable framework for determining the qualified immunity question and adopted an objective standard allowing suit only when the officials' conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Id.* at 817–818. Since *Harlow*, the Supreme Court has consistently reaffirmed the qualified immunity doctrine.

In *Malley v. Briggs*, 475 U.S. 335, 341 (1986), the Court held that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Id*. The Court has repeatedly invoked that

standard.[3] A court must ask whether it would have been clear to a reasonable officer that the alleged conduct "was unlawful in the situation he confronted." *Saucier, supra*, at 202. *See also*, *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017). In other words, the contours of the right must have been sufficiently clear that every reasonable officer would have understood that what he was doing violated the right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)*.* Existing precedent must have placed the statutory or constitutional question beyond debate. *See id.*; *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018); *Malley v. Briggs*, 475 U.S. 335, 341 (1986). *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

## B. CLEARLY ESTABLISHED LAW MUST BE BASED ON SUPREME COURT OPINIONS

The Supreme Court has not definitively stated what constitutes clearly established law beyond its own decisions – if anything. But the Court has repeatedly questioned whether binding circuit precedent constitutes clearly established law for qualified immunity purposes. This Court should adopt this stricter standard to clearly establish the law.

At least six times in the last ten years the Supreme Court has strongly suggested that circuit court precedent does not clearly establish law for

---

[3] Since *Malley* was decided in 1986 the Supreme Court has repeated the standard no fewer than 21 times, beginning with *Anderson v. Creighton*, 483 U.S. 635, 638 (1987), and more recently in *City of Tahlequah, Oklahoma v. Bond*, 142 S. Ct. 9, 11 (2021).

qualified immunity purposes. In *Reichle v. Howards,* 566 U.S. 658 (2012), the court stated: "Assuming arguendo that controlling Court of Appeals' authority could be a dispositive source of clearly established law in the circumstances of this case, the Tenth Circuit's cases do not satisfy the 'clearly established' standard here." *Id.* at 665-666. See also *Carroll v. Carman*, 574 U.S. 13 (2014); *City & County of San Francisco, Calif. v. Sheehan*, 575 U.S. 600 (2015); *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018); *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503-504 (2019). Most recently in *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4 (2021), the Supreme Court reiterated its skepticism that circuit precedent can constitute clearly established law for purposes of qualified immunity:

> Neither *Cortesluna* nor the Court of Appeals identified any Supreme Court case that addresses facts like the ones at issue here. Instead, the Court of Appeals relied solely on its precedent in *LaLonde.* Even assuming that Circuit precedent can clearly establish law for purposes of § 1983, *LaLonde* is materially distinguishable and thus does not govern the facts of this case.

*Id.* at 8. Additionally, in *Mullenix v. Luna*, 577 U.S. 7 (2015), the Court implied that only Supreme Court decisions constitute clearly established law: "The dissent can cite no case from this Court denying qualified immunity because officers entitled to terminate a high-speed chase selected one dangerous alternative over another." *Id.* at 15.

When Ansari was convicted on September 13, 2013, no Supreme Court authority  would have told every reasonable officer that failing to disclose information about a drug dealer who supposedly ordered a hit on the victim or failing to disclose uncorroborated rumors or anonymous tips about a drug dealer having purportedly ordered a hit on the victim violated a police officer's obligations under *Brady/Giglio*. No decision from the Supreme Court held or even suggested that inculpatory information (like Ansari's motive to go after the victims) or uncorroborated rumors and anonymous tips had to be turned over as a matter of constitutional rights. Thus, even if the district court is correct that Jimenez failed to turn over the complained-about Sandoval information, no clearly established law would have told him that the failure to turn the information over was a violation of Ansari's rights.

Thus, the district court reversibly erred in denying qualified immunity as to both claims.

## C. Even Under This Circuit's more relaxed standard, Jimenez Did Not Violate A Clearly Established Right.

This Court has adhered to a somewhat more relaxed standard allowing consideration of its own precedent or a robust consensus of decisions to constitute clearly established law. This Court has rejected use of out-of-circuit decisions to clearly establish the law except in extraordinary situations. *Beck*

*v. Hamblen County, Tennessee*, 969 F.3d 592, 603 (6th Cir. 2020).

At a minimum, to defeat qualified immunity there must have been in 2013 a Supreme Court decision, a Sixth Circuit decision, or "a robust 'consensus of cases of persuasive authority'" (*al-Kidd, supra*, 563 U.S. at 742, quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)), holding that failure to disclose the Sandoval evidence providing a motive for the shootings and to disclose uncorroborated rumors and anonymous tips was a *Brady* violation. No such Sixth Circuit precedent nor robust consensus of cases existed in 2012-2013. Likewise, no precedent from this Court nor any robust consensus of cases would have told Jimenez that he was violating Ansari's due process right to a fair trial when Ansari's lawyer knew about Sandoval, and the information was inculpatory merely showing a motive for Ansari's conduct, and the information was remote and only tenuously connected to Ansari's trial by uncorroborated rumors and anonymous tips.

## D. UNDER ANY DEFINITION OF CLEARLY ESTABLISHED LAW, THE ANALYSIS MUST BE PARTICULARIZED IN TERMS OF THE FACTS

Courts analyzing qualified immunity must also heed the Supreme Court's nearly incessant admonitions to the lower courts to refrain from defining clearly established law at a high level of generality.

> Today, it is again necessary to reiterate the longstanding principle that "clearly established law" should not be defined "at a high

level of generality." ... As this Court explained decades ago, the clearly established law must be 'particularized' to the facts of the case. Otherwise, '[p]laintiffs would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'"

*White v. Pauly*, 580 U.S. 73, 137 S. Ct. 548, 552 (2017)(citations omitted). "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Rivas-Villegas, supra*, 142 S. Ct. at 8, quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

**E.     A *BRADY/GIGLIO* CLAIM REQUIRES THE PLAINTIFF TO SHOW THAT THE GOVERNMENT WITHHELD EVIDENCE THAT FAVORS THE ACCUSED BECAUSE IT WAS EXCULPATORY OR IMPEACHING, WAS MATERIAL TO THE CRIMINAL DEFENDANT'S GUILT OR INNOCENCE, WAS ADMISSIBLE, AND A REASONABLE PROBABILITY EXISTS THAT, IF DISCLOSED, THE RESULT OF THE PROCEEDING WOULD HAVE BEEN DIFFERENT**

To prevail on a *Brady/Giglio* claim, the proponent must show that the evidence favors the accused, either because it is exculpatory or impeaching. *Strickler v. Greene*, 527 U.S. 263, 281-282 (1999); *United States v. Douglas*, 634 F.3d 852, 860 (6th Cir. 2011). The evidence must have been suppressed by the government. *Id.*  And the evidence must be material. *Id.* Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Doan v. Carter*, 548 F3d 449, 459-460 (6th Cir. 2008) citing *United States v. Bagley*, 473 U.S. 667, 682 (1985). *See also Giglio v. United States*, 405 U.S. 150, 154

(1972).  The Supreme Court has recognized that the decision on whether evidence is to be disclosed under *Brady* or *Giglio* is based on an exercise of discretion. *Imbler v. Pachtman*, 424 U.S. 409, 425 (1976).

Material evidence favorable to a defendant does not include generic evidence about prior bad acts with only a tenuous connection to a pending case. *Stockdale v. Helper*, 979 F.3d 498, 504 (6th Cir. 2020) citing *Hogan v. Hanks*, 97 F.3d 189, 191 (7th Cir. 1996). When "'information is readily available to the defense from another source, there is simply nothing for the government' to turn over." *Stockdale*, 979 F.3d at 504 quoting *Matthews v. Ishee*, 486 F.3d 883, 891 (6th Cir. 2007). When the information was a matter of public record or the criminal defendant was aware of the essential facts needed to get that evidence, *Brady* does not apply. *Bell v. Bell*, 512 F.3d 223, 236 (6th Cir. 2008) (citations omitted). This Court has rejected *Brady* claims when the evidence is as arguably incriminating as exculpatory. *Jalowiec v. Bradshaw*, 657 F.3d 293 (6th Cir. 2011).

When reviewing evidence alleged to violate *Brady*, this Court analyzes the evidence collectively and considering the evidence available for trial that supports the conviction. *Jalowiec v. Bradshaw*, 657 F.3d 293, 304-307 (6th Cir. 2011). If the plaintiff has not shown that he could have effectively used such evidence to undermine confidence in the jury's assessment of the evidence,

that is, that it is reasonably probable the evidence would have caused a different result, no *Brady* claim can survive. *Jalowiec*, 657 F.3d at 307. When a criminal defendant's lawyer managed to cross-examine a witness highlighting weaknesses in the testimony without the *Brady* evidence, the plaintiff has not satisfied this test. *Id*.

Even if evidence might have been used to impeach a witness, a *Brady* claim is properly rejected when it was not material, that is, that it would have made a difference. *Id.* at 398. Thus, this Court has upheld a district court's rejection of a *Brady* claim because purportedly withheld police reports and audio recordings about prosecutorial and police interviews of various witnesses and potential suspects were not material evidence. *McNeill v. Bagley*, 10 F.4th 588, 591 (6th Cir. 2021). Impeaching evidence may be material when used to impeach and when it is the "*only* evidence linking [the defendant] to the crime" or when it "*directly contradict*[ed] [the witness's] testimony." *McNeill v. Bagley*, 10 F.4th at 603-604 quoting *Smith v. Cain*, 565 U.S. 73, 76 (2012)(emphasis added).

This Court has also held that withheld information "is material under *Brady* only if it would have been admissible at trial or would have led directly to admissible evidence." *United States v. Ogden*, 685 F.3d 600, 605 (6th Cir. 2012). *See also Gumm v. Mitchell*, 775 F.3d 345, 363-364 (6th Cir. 2014). If the

information is not admissible, it "'is not evidence at all' for purposes of *Brady*
and thus can have no 'direct effect on the outcome of a trial.'" *Woganstahl v.
Mitchell*, 668 F.3d 307, 325 n. 3 (6th Cir. 2012) quoting *Wood v. Bartholomew*,
516 U.S. 1, 6 (1995).

Ansari's claim is based on the purported failure to disclose
unsubstantiated, uncorroborated, inadmissible hearsay information involving:

a. GPS tracking evidence that someone named Jose Sandoval was
near the site of the shootings at the time they were committed;

b. Cell phone information that did not show any calls or text
between Ansari and Sandoval;

c. An unsubstantiated rumor that the "hit" was ordered because
the surviving victims had stolen 3.5 kilos of heroin from
Sandoval;

d. Information uncovered by Jimenez during his investigation
that Sandoval was alleged to supply 65% of the heroin in
Southeast Michigan;

e. An unsubstantiated rumor that Sandoval had placed a
$30,000.00 bounty on the heads of the surviving victims to be
paid to the person who murdered them;

f. An anonymous tip that someone with the nickname of "Solo"
was the hitman.

None of this claimed information satisfies the test for a claim under
*Brady* or *Giglio*. It fails on multiple grounds.

**F.** **ANSARI FAILED TO MEET HIS BURDEN TO SHOW CLEARLY ESTABLISHED LAW IN THE PARTICULAR CIRCUMSTANCES THAT THE EVIDENCE JIMENEZ PURPORTEDLY WITHHELD HAD TO BE DISCLOSED UNDER *BRADY* OR *GIGLIO***

To prevail against a qualified immunity defense, it is not enough to assert that *Brady* and *Giglio* obligations were recognized in 2012 and 2013. Ansari must show clearly established law that this kind of collateral evidence based on uncorroborated rumors and anonymous tips fell within the *Brady/Giglio* obligations of police investigators. But the connection argued by Ansari in this lawsuit is highly tenuous and speculative. Without the anonymous tips and rumors, nothing connected the Sandoval tracking information, information about Sandoval's drug dealing, and information that he supposedly had ordered a hit on Figueroa and Barley because they stole drugs from him, with the shooting. This is a far cry from a detective's deliberate suppression of admissible evidence of another strong suspect or evidence that would eviscerate a prosecutor's theory against a criminal suspect.

The district court cited no decisions involving comparable evidence that would have put Jimenez on notice of a constitutional obligation to turn over the evidence on which Ansari's claim rests. To the contrary, multiple decisions from the Supreme Court and this Court show that uncorroborated rumors or anonymous tips like those at issue here did not need to be disclosed and that

no claim exists when the information would not have reasonably probably changed the outcome.

Let's analyze Ansari's theory. First, it is based on accepting anonymous tips and rumors that Sandoval was a drug kingpin. Second, it is based on accepting anonymous tips and rumors that Sandoval had ordered a hit due to a theft of drugs. Third, it is based on assuming that Ansari shot at the victims, Figueroa, Barley, and Cuevas, to get payment from Sandoval. But no hard evidence supports this theory. In fact, the complained-of purportedly undisclosed tracking information merely shows Sandoval in the area. Since he was not a party to the criminal case and motive was not the focus, this would not have been admissible at Ansari's criminal trial. And the cell phone data showed no call between Sandoval and Ansari. If anything, this underscores the tenuous and speculative nature of this theory. The likely explanation for the absence of calls between Sandoval and Ansari, if one assumes that Ansari was acting at Sandoval's behest, is that Sandoval did not keep any burner phone on which he had communicated with Ansari once the shooting took place. Alternatively, no calls could show that Sandoval had nothing to do with the shooting. In any event, this information was not admissible. Nor was it material since it could not have been used at trial, and if somehow used, it

would not have changed the outcome, which was based on two eyewitness identifications of Ansari as the shooter.

The information does not exculpate Ansari as the shooter. At best, it inculpates Sandoval as a person who ordered the shooting. The information arguably gave Ansari a motive – collecting a bounty offered by Sandoval. During the criminal trial, the prosecutor's case was based on two surviving victims' eyewitness identification of Ansari – not on motive. In fact, the prosecutor explicitly told the jury in the criminal trial that she "[didn't] need to prove motive." 2/12/24 Tr, RE 171, PageID.4530, 4622. So, at best, the undisclosed information offered a mere possibility (and a tenuous one at that) that the information might have helped the defense. The Supreme Court has reversed decisions that fail to consider whether the prosecutor's failure to respond might have had an impact on the preparation or presentation of the defendant's case. *United States v. Bagley*, 473 U.S. 667, 674-675 (1985)("[T]he mere possibility that an item of undisclosed information might have helped the defense or might have affected the outcome of the trial does not establish 'materiality' in the constitutional sense.") citing *United States v. Agurs*, 427 U.S. 97, 109-10 (1976). Those principles apply here.

Ansari has not shown a reasonable probability that the withheld information, if disclosed, would have changed the outcome of his criminal

trial. As DEA Agent Craig Michelin testified, even after Jimenez turned the information over to the federal government, the federal government could not substantiate the rumors that Sandoval had ordered a hit on the victims. Michelin Trial Tr, RE 184-4, 5231-5235. Since only hearsay rumors and unsubstantiated anonymous tips connected Sandoval to the shooting, the tracking information and cell phone data and the rumors about Sandoval's drug dealing, anger over drug thefts, or putting a bounty on someone, would have been excluded from evidence.

Ansari's criminal defense attorney also knew about Sandoval's prior assault on Barley and Figeroa since their witness statements taken at the time of the incident disclosed it. 2/8/24 Tr, RE 170, PageID.4249, 4372-4375; Jimenez's Motion for Summary Judgment, RE 59-24, PageID.1056.  Thus, both the prosecutor and criminal defense attorney could have cross-examined them about Sandoval's prior assault and reasons for his enmity with them. The allegation about Barley stealing heroin, even if true, was a collateral issue for which no extrinsic evidence could have been admitted during Ansari's criminal trial. *See* FRE 608(b)("extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness."). Thus, the claimed *Brady*/*Giglio* violation fails because the information was not admissible, Ansari and his

criminal lawyer already knew about Sandoval, and it would not have changed the outcome at trial.

The information also could not have been used to impeach Barley. Her testimony during the criminal trial was simply that she was "in shock," "hurt," "confused," and that the shooting was "so unexpected that I didn't even know what was going on." Barley Criminal Trial Tr, RE 181-3, PageID.5229. Likewise, Figueroa said he did not know why the shooting had occurred. Figueroa Criminal Trial Tr, RE 181-5, PageID.5237. Neither were cross-examined about Sandoval during Ansari's criminal trial even though the criminal defense lawyer knew about him. Neither Barley nor Figueroa has ever admitted to having stolen illicit drugs from Sandoval. Neither Barley nor Figueroa would or should have been aware at the time of the shooting of why Ansari purportedly put a bounty on their heads. As prosecutor Tusar testified, Ansari's criminal trial was about Barley and Figueroa's eyewitness identification of Ansari as the shooter. She told the jury that motive was not an element of the crime and the jury need not consider it. 2/12/24 Tr, RE 171, PageID.4527. Tusar repeatedly testified that she had "no idea" if the complained-of information was exculpatory. *Id.* at PageID,4623-4624. Careful review shows that it was not material, admissible, or exculpatory.

Thus, no reasonable probability existed that the criminal defense lawyer's ability to impeach Barley or Figueroa would have changed the criminal jury's verdict convicting Ansari. *See Turner v. United States*, 582 U.S. 313, 324 (2017)(prejudice requires showing that failing to disclose the information "caused a deprivation of the accused's liberty." *Cairel v Alderden*, 821 F.3d 823, 832 (7th Cir. 2016). *See also, U.S. v. Taylor*, 471 F. Appx. 499 (6th Cir. 2012)(no claim when failure to disclose impeachment evidence did not prejudice defendants and rejecting obligation to turn over internal memoranda containing "unsubstantiated conjecture").

The Supreme Court and this Court have made clear that the government need not "convey every undocumented negative opinion about its testifying officers." *United States v. Agurs*, 427 U.S. 97, 109 (1976)("if everything that might influence a jury must be disclosed, the only way a prosecutor could discharge his constitutional duty would be to allow complete discovery of his files as a matter of routine practice… [T]he Constitution surely does not demand that much.").  In the face of this clearly established law showing that Jimenez was not obligated to turn over the complained-of evidence, the district court's denial of qualified immunity was reversible error.

*Turner v. United States*, 582 U.S. 313, 326 (2017) provides an example of the proper analysis. In *Turner*, the purportedly undisclosed evidence included

(1) the identify of an eyewitness (named McMillan) who saw only two assailants and purportedly could have confirmed the witness did not see the petitioners; (2) a prosecutor's interview with another witness (named Luchie) who said she saw only three people near the scene; (3) a police officer's notes regarding interviews with a witness who claimed another person (James Blue) committed the murder; and (4) impeachment evidence for four witnesses. *Id.* at 320-323. Unlike here, the government conceded that the withheld evidence was "favorable to the accused, either because it is exculpatory or because it is impeaching." *Id.* at 323.

The criminal defendants' main argument in *Turner* was that if they had known about McMillan's identity and Luchie's statement, they could have challenged the Government's basic theory that the victim was killed in a group attack. They also contended they could have raised an alternative theory, that a single perpetrator, not a large group had attacked the victim. *Id.* at 325 After analyzing the record as a whole, the Supreme Court found the evidence was "too little, too weak, or too distant from the main evidentiary points to meet *Brady's* standards." *Turner*, 582 U.S. at 326. The Supreme Court explicitly pointed to the importance of the eyewitnesses' trial testimony regarding the murder. *Id.* at 326. And it rejected the plaintiff's argument that the evidence could be used to attack the prosecution's theory. *Id.* at 325.

Likewise, here, even if all the evidence that was allegedly withheld by the prosecutor had been favorable, it was not material. At best, it offered a weak speculative link that had a bearing on Ansari's motive. It was inadmissible as substantive evidence because no testimony connected Sandoval to the shooting but for anonymous tips and uncorroborated rumors. And if Sandoval had ordered a hit, that would not mean Ansari was innocent. As in *Turner*, the withheld evidence might have been used to impeach witnesses or to suggest an alternative theory. But it would not have shown that Sandoval pulled the trigger. And it would not have vitiated the eyewitness accounts and later identifications by two surviving victims. Sandoval's presence in an alley near the shooting does not change the fundamental question of who pulled the trigger. Two eyewitnesses identified Ansari as that man.

The evidence that Sandoval kept several burner phones is also immaterial. The existence of these phones would likely have been inadmissible since Ansari's connection or lack of connection to Sandoval would have had no probative value on Ansari's guilt or innocence. At best, the Sandoval information offered the jury a wildly speculative theory that Sandoval (a non-party to the criminal trial) had ordered a hit against the victims. Alternatively, Ansari's theory that since the burner phones showed no

call with Ansari, he could not have been the shooter, is contradicted by the testimony of two eyewitnesses and another tip that the shooter's nickname was Solo (which was Ansari's nickname). 2/12/24 Tr, RE 171, PageID.4402-03; Jimenez's Motion for Summary Judgment, RE 59-9, PageID.971, and RE 59-2, PageID.1080-1081. Since a drug trafficker would be highly unlikely to keep a burner phone used to orchestrate a murder after the attempted murder was completed, the absence of calls between Sandoval and Ansari on the cell phones later taken from Sandoval would not have been relevant or admissible during the criminal trial. *United States v. Philip*, 948 F.2d 241, 249 (6th Cir. 1991). *See also Wood v. Bartholomew*, 516 U.S. 1, 6 (1995). Likewise, information that Figeroa and Barley may have stolen drugs from Sandoval, a drug kingpin, would not have been admissible or material.

Neither the district court's opinion denying qualified immunity before trial nor its abbreviated discussion of qualified immunity in its post-trial opinion set forth any clearly established law that would have told Jimenez he had a duty to disclose unsubstantiated rumors and anonymous tips involving Sandoval and the related Sandoval evidence. In addition, the district court's initial opinion shows the problem with denying qualified immunity here. The district court set forth the facts concerning two eyewitnesses' identification of Ansari as the shooter. Opinion and Order, RE 70, PageID.1813-1815. The

district court concluded that "Figeroa's identification was reliable at the time." *Id.* at PageID.1822. The district court also found that Barley's identification "largely tracked Figeroa's descriptions." *Id*.

This evidence is what the jury relied on when it convicted Ansari at the criminal trial. The jury's verdict is not surprising since, as the district court explicitly held, "[T]he Sandoval evidence does not undermine the reliability of Figueroa's identification; it merely provides a motive for the shooting." *Id.* at PageID.1823. Exactly.

The district court later held that the purportedly undisclosed evidence was nonetheless material because it undermined the government's theory and because it would have allowed key witnesses to be impeached about their purported drug trade connections to Sandoval. *Id.* at PageID.1826-1827. But the district court cited no evidence that this information satisfied the requirements for materiality or for being exculpatory based on the whole record of the criminal trial. *Id.* The district court cited no decisions from the Supreme Court or this Court arising in even remotely similar circumstances.

The district court cited only two decisions, *Moldowan v. City of Warren*, 578 F.3d 351 (6th Cir. 2009) and *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010). Neither decision arose in factual circumstances anywhere close to those at issue here. Clearly established law told Jimenez that the *Brady*/*Giglio*

obligation does not require disclosure of uncorroborated rumors or anonymous tips or the police investigators' or prosecutors' speculative theories based on such ephemeral and inadmissible evidence.

But even assuming the information was material, the district court cited no case in which the Supreme Court, this Court, or a robust consensus of cases would have shown a *Brady/Giglio* violation existed in these circumstances. The district court articulated only extremely broad principles from *Brady* and *Giglio*, neither of which imposed a duty on police officers, only prosecutors, and neither of which involved the kind of information at issue here. While this Court has applied *Brady* to the police in *Moldowan*, whether police have an independent duty under *Brady* was not beyond dispute in 2012. *See Jean v. Collins*, 221 F.3d 656 (4th Cir. 2000)(en banc split). And no authority showed that immaterial, inadmissible information connected to the criminal trial only by anonymous tips and rumors needed to be disclosed. Thus, a reversal is required.

**IN THE ALTERNATIVE, JIMENEZ IS ENTITLED TO A NEW TRIAL BECAUSE THE DISTRICT COURT RULINGS INDIVIDUALLY AND CUMULATIVELY DEPRIVED HIM OF HIS SUBSTANTIAL RIGHTS TO A FAIR TRIAL**

**A.** **THE DISTRICT COURT ERRONEOUSLY EXCLUDED KEY EVIDENCE SUPPORTING JIMENEZ'S POSITION**

At trial, the only factual issue for the jury to resolve was whether Jimenez suppressed or withheld evidence that Ansari could have used to either exculpate himself or impeach key witnesses changing the outcome in his criminal trial. Whether Jimenez turned the documents over to the prosecutor was hotly contested. The assistant prosecutor's testimony was – at best – equivocal. Indeed, her obstructionism during the first trial drew strong admonitions from the district court. In the second trial, she said repeatedly that she did not recall speaking with Jimenez about the information that Ansari claimed Jimenez failed to disclose. 2/12/24 Tr, RE 171, PageID.4529, 4531-4532, 4540, 4542-4543, 4555-4557, 4587.

The prosecutor wrote a memo only a few days after Ansari's trial discussing the information Ansari claims she did not have. *Id.* at PageID.4574-4577; Defense Exhibit 2, 2/12/24 Tr, RE 171, PageID.187-189. And the physical file produced by the prosecutor's office in response to a subpoena included all the information.

These two critical pieces of evidence cast doubt on the reliability of the prosecutor's equivocal denials about whether she knew the information before Ansari's trial. Yet the district court excluded the physical file from being introduced into evidence and heavily redacted her memorandum. This highly relevant information was kept from the jury.

Federal Rule of Evidence 902 allows a court to admit self-authenticating documents into evidence. F.R.E. 902. *See also United States v. Jones*, 107 F.3d 1147, 1150 n.1 (6th Cir. 1997)(quoting Jack B. Weinstein et al., *Weinstein's Evidence Manual*, P 901 (a) at 901-919 (5th ed. 1996). Jimenez sought to admit a copy of a 911-page file produced by the prosecutor's office in response to a subpoena. 2/12/24 Tr, RE 171, PageID.4868. The district court initially ruled that the 911-page file was self-authenticating. 2/14/24 Tr, RE 173, PageID.4857. But during trial, the district court ruled that the jury could not see the file. Amended Order on Prosecutor's Office File, RE 159, PageID.3739. The district court reasoned that: 1) no foundation was laid as to *when* certain documents were placed in the file or who placed them there; and 2) "the potential probative value was substantially outweighed by the danger of unfair prejudice, confusing the issues, and needlessly presenting cumulative evidence." Opinion Denying Post Judgment Motions, RE 189, PageID.5522. The district court noted that some documents in the file pertained to

information excluded in limine. But this was no basis for exclusion because Jimenez's trial counsel had agreed to redact the properly excluded information. 2/14/24 Tr, RE 173, PageID.4959.  Jimenez sought to introduce the file to show that the prosecutor's office had received the documents, not to show the truth of any statement contained in them. *See United States v. Gaitan-Acevedo*, 148 F3d 577 (6th Cir. 1998).

The district court's ruling decided the very fact question that was before the jury. 2/12/24 Transcript, RE 171, PageID.4573, 4586; Plaintiff's Motion in Limine No. 4, RE 91, PageID.2103. Ansari's theory at trial was that Jimenez *never* turned this information over. 2/8/24 Tr, RE 169, PageID.3941, 3953. The file undermines that theory. The district court wrongly put its thumb on the evidentiary scale accepting Tusar's testimony about the documents without allowing the jury to decide whether she had the documents during the criminal trial.  And it tracked Jimenez's argument that Tusar had the information because the over 900-page file contained the purportedly missing information.

The file's importance was underscored by Ansari's attorney in closing:

The second thing she said, "You'll hear about a big discrepancy in the number of pages that the CIU claims were turned over by Detective Jimenez and the number of pages in a file we subpoenaed during discovery." And so you're going to be asked to determine how the

information got in the file at Wayne County if Detective Jimenez didn't give it to the prosecutor.

Well, when you go back to the jury room, understand this. ... His Honor is going to tell you what the lawyer's say is not evidence, it's argument. Somebody asks this: "Where is the file we're supposed to look at? Is that evidence that we can look and put our hands on and see if the Brady evidence is in those files like she claims? Where's the file?" What she showed Ms. Tusar was two search warrants that we say are not even in the homicide file for Cuevas. There were in a felonious assault case that Jimenez was actually in charge of against Sandoval.

2/15/24 Tr, RE 174, PageID.4995. Ansari's lawyer exploited this erroneous ruling by focusing the jury's attention on the absence of the file in the evidence provided to them. He told them to ask themselves, "Where's the file?" *Id.* Of course, the jury did not have the file since Ansari's lawyer had successfully persuaded the district court to keep it from the jury. This requires reversal.

## B.    THE DISTRICT COURT ERRONEOUSLY ALLOWED ONLY A PORTION OF PROSECUTOR TUSAR'S INTERNAL MEMO INTO EVIDENCE

Ansari moved in limine to exclude an "Internal Memorandum" prepared by Tusar which contradicts her deposition testimony about whether she received information on Sandoval from Jimenez. Jimenez's Motion for Summary Judgment, RE 59-34, PageID.1144. Ansari argued that the memo was "hearsay and is irrelevant to the issues in the instant case." Plaintiff's Motion in Limine No. 4, RE 91, PageID.2103. Jimenez disagreed. Defendant

Response to Motion in Limine No. 4, RE 114, PageID.2734– 35. The district court allowed only one paragraph of the information to be introduced at trial. Omnibus Opinion and Order Resolving Plaintiff's Motions in Limine, RE 130, PageID.2929-2930; 2/12/24 Tr, RE 171, PageID.4576-4577.

Both conviction integrity unit attorney Stanyar and prosecutor Tusar testified repeatedly that the redacted portions of the memo had little or nothing to do with Ansari's prosecution. Stanyar said the redacted portion only "vaguely" mentioned the Ileana Cuevas murder (for which Ansari was convicted) and referred to the other ongoing investigations. 2/9/24 Tr, RE 170, PageID.4202. Tusar repeatedly said that the redacted portion of the memo was "in regards to the Tommy Edwards trial" and didn't "have anything to do with the Cuevas case." 2/12/24 Transcript, RE 171, PageID.4575.

The Court's redaction order allowed Stanyar and Tusar to deny that the redacted portions of the memo memorialized information that Jimenez had given to Tusar before the criminal trial; the complete memo would have shown their testimony was untrue and supported Jimenez's testimony that he provided the information before the criminal trial and that Tusar did not disclose it to Ansari's criminal defense lawyer because the information pertained to an FBI undercover situation. If the jury had the file, it would have been far more likely to see her efforts to obfuscate about what information

was in her file as after-the-fact rationalizations to avoid responsibility for a mistaken decision not to turn the information over.

Federal Rule of Evidence 106, which embodies a rule of completeness, dictates the entirety of the memo should have been admitted:

> If a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part — or any other statement — that in fairness ought to be considered at the same time. The adverse party may do so over a hearsay objection.

"The 'rule of completeness' allows a party to correct a misleading impression created by the introduction of part of a writing by introducing additional parts needed to put the admitted portions in proper context. *United States v. Holden*, 557 F.3d 698, 705 (6th Cir. 2009).

The entire memo should have been admitted, especially after Stanyar and Tusar denied that the redacted portions of the memo contained information that could only have come from Jimenez. Ansari's lawyer told the jury in closing the "Memo said nothing all the detailed information that we've talked about." 2/15/24 Tr, RE 174, PageID.5005. He emphasized that they only had "[a] vague memo, one paragraph, that's all you have." *Id.* Of course, the reason it was only one paragraph and did not contain detailed information is because it was redacted by the district court. The failure to allow the entire

memo into evidence was highly prejudicial to Jimenez and warrants a new trial.

**C.** **THE VERDICT FORM FAILED TO TELL THE JURY THAT THE ONLY BASIS FOR A VERDICT ON ANSARI'S *BRADY/GIGLIO* CLAIM WAS IF THE JURY FOUND THAT JIMENEZ WITHHELD EXCULPATORY OR IMPEACHING EVIDENCE FROM THE PROSECUTOR AND NOT A FAILURE TO ADEQUATELY INVESTIGATE**

A district court's refusal to give a jury instruction constitutes reversible error if (1) the omitted instruction is a correct statement of the law, (2) the instruction is not substantially covered by other delivered charges, and (3) failing to give the instruction impairs the requesting party's theory of the case. *Tompkin v. Phillip Morris USA, Inc.*, 362 F.3d 882 (6th Cir. 2004) A judgment may be reversed when the instructions, viewed as a whole, were confusing, misleading, or prejudicial. *Id.* (citing *Beard v. Norwegian Caribbean Lines,* 900 F.2d 71, 72–73 (6th Cir. 1990)). A verdict form is reversible error when it fails to reflect the correct legal standard. *See* generally, *Craddock v. FedEx Corporate Services, Inc.,* 102 F.4th 832, 842-843 (6th Cir. 2024).

In *Cincinnati Fluid Power, Inc. v. Rexnard, Inc.*, 797 F.2d 1386 (6th Cir. 1986), this Court held a party is entitled to a specific instruction on his theory of the case if there is evidence to support it and a proper request for the instruction is made. *Id.* at 1392. In *Burkhart v. Randles*, 764 F.2d 1196, 1199 (6th Cir. 1985), the plaintiffs challenged the constitutionality of their

employment dismissals. They submitted three requested jury instructions on their Fourteenth Amendment due process claims, which they contended showed the standard for providing a name-clearing hearing. *Id.* at 1200. The court instead, gave an instruction that failed to explain the nature of the liberty interest at stake, under what circumstances due process requires an opportunity to clear one's name, or under which facts the jury could find a violation of the plaintiffs' civil rights. After a defense verdict, the plaintiffs appealed. This Court reversed because "taken as a whole, the instructions to the jury on this claim failed to adequately present the issues of the case or the applicable law."

Similarly, here the district court had already held that "the narrow factual issue to be litigated—(is) whether Defendant turned *Brady* and *Giglio* evidence over to the Wayne County Prosecutor's Office." Opinion and Order Regarding Motions in Limine 87, 88, 90, 102, RE 129, PageID.2921.

Jimenez's proposed verdict form read: "Did Defendant, Moises Jimenez, violate Plaintiff, Alexandre Ansari's, Fourteenth Amendment right to due process by withholding exculpatory evidence from the prosecutor?" 2/14/24 Tr, RE 173, PageID.4946-4948.  The district court asked: "Did Defendant, Moises Jimenez, violate Plaintiff, Alexandre Ansari's, Fourteenth Amendment right to due process?"

The failure to include the phrase "by withholding exculpatory evidence from the prosecutor" allowed the jury to consider Ansari's other attacks on Jimenez for failing to adequately investigate to determine Ansari's guilt or innocence. Despite in limine rulings excluding arguments and evidence on guilt or innocence and purported failures to investigate, Ansari's lawyer repeatedly focused the jury's attention on Jimenez's investigation. During his opening, Jimenez's attorney stated: "And he's going to admit that he didn't do so many fundamental things that we're going to talk about that would have pointed to Sandoval." 2/8/24 Tr, RE 169, PageID.3944. Ansari's attorney also said: "He didn't collect any evidence that would point to Sandoval, none. He didn't do any of the basic things. Remember he got that search warrant for Sandoval's phones? If his theory ... which is the prosecutor didn't know and defense didn't know, was that this is a hit, he didn't get Ansari's phone, download the evidence, see if there's communication, talking between somebody. He –... didn't listen to any phone calls from the Wayne County Jail, even though ... he says, 'People confess all the time to their girlfriend.' " *Id*. at PageID.3952. While questioning Todd Russell Perkins, Ansari's asked: "Let's ... turn a little bit to the subject of what wasn't done in this case, what you understood from the evidence. If –... Jimenez's theory was Sandoval was

calling the shots and Ansari was supposed to be the hit man, would you have expected … Officer Jimenez to download Ansari's phone?" *Id*. at PageID.4019.

Likewise, Ansari's lawyer repeatedly brought up Jimenez's investigation during his questioning of Carole Stanyar. He asked about Jimenez's affidavit regarding a search warrant, stating: "That's where the affiant, Jimenez, is requesting the court to suppress the search warrant. See that?" *Id*. at PageID.4063. He also asked:

> Q: When you had your conversation with Jimenez and you had looked at the file, did you see any evidence at all that Jimenez was investigating Sandoval for this conspiracy?
> A: The drug conspiracy?
> Q: No, the conspiracy to kill Barley and Figueroa.
> A: He didn't do the most basic investigation.

2/8/24 Tr, RE 169, PageID.4114.

Ansari's lawyer continued this theme when he questioned Jimenez. He asked of Figueroa: "Something as important as 'Why did you get shot, why did your girlfriend get shot, why did this cute little 15-year-old girl die?' you didn't ask him?" 2/9/24 Tr, RE 170, PageID.4268. He pressed Jimenez on his investigation:

> Q: 'Do you know why somebody is shooting at you?,' you didn't ask, did you?
> A: Not in that wording, no.

> Q: In any wording. Tell me what wording you asked to find out
> from Mr. Figueroa, 'Why the heck is there a bounty on your head?
> That's a high price, $30,000.'

*Id*. at PageID.4269.

Ansari's lawyer suggested that Jimenez wasn't adequately investigating because he failed to question Figueroa while driving him to safe houses: "As a veteran detective, you're not having conversations to try to get details from this guy?" *Id*. at PageID.4270. Ansari's lawyer repeatedly suggested that Jimenez failed to properly investigate: "Okay. Let me just clarify this, let's put a bow on that and I'll move on. You don't have any recollection of ever asking Miguel Figueroa, 'Why the heck do you have a bounty on your head?'" *Id*. at PageID.4271. He questioned Jimenez about why he didn't have progress notes showing everything he did, accusing him of failing to try to get drug cartel members off the street. *Id*. at PageID.4306-4314. Ansari's lawyer again focused on the investigation:

> Q: Okay. So in terms of trying to solve a crime, establish a
> conspiracy, you need to connect dots, right?
> A: Yes.
> Q: Okay. But one of the ways to connect a dot is to actually ask
> Ansari, 'Who is Jose Sandoval? Did he hire you?' You didn't do
> that, right?
>      * * *
> Q: …You didn't ask [Ansari] about Sandoval?
>      * * *
> Q: You didn't ask, 'Did you get paid? Who paid you?'

* * *

Q: You didn't ask, 'Witnesses say there was a gold car who picked up the shooter. Who's the driver?,' did you?

2/9/24 Tr, RE 170, PageID.4333.

He drove this theme home. Talking about Jimenez's interrogation of Ansari, he asked: "And you didn't even ask him, 'Why'd you do it?' " and then also asked "You also didn't seek to get a search warrant for his telephone, did you?" *Id*. at PageID.4334. He questioned why Jimenez failed to try to get prosecutor Tusar to get Ansari to flip so they could get to Sandoval. *Id*. at PageID.4334, 4336-4337. He questioned why Jimenez failed to monitor Ansari's phone calls from jail. *Id.* PageID.4340. Ansari's lawyer suggested that Jimenez failed to use "fundamental, basic investigative technique." *Id*. at PageID.4341-4345.

So important was the theme to Ansari's case that his lawyer reiterated his attacks on Jimenez's investigation during his closing argument. He told the jury that Jimenez "chose not to collect evidence and investigate Sandoval's involvement in this case." 2/15/24 Tr, RE 174, PageID.4984. He suggested to the jury that there was "no evidence [Jimenez] had ever found to back up, to corroborate that hit man – Ansari is the hit man for Sandoval." *Id*. at PageID.4992. Of course, whether Ansari was Sandoval's hit man – and by

implication – whether Ansari was the shooter was not the issue before the jury – as the trial court had ruled.

But this repeated harping on Jimenez's investigation and its purported inadequacies allowed the jury to believe that the constitutional violation here was a wrongful conviction due to an inadequate investigation – rather than the narrower and only relevant question of whether Jimenez turned over information about Sandoval (which was found in the prosecutor's file and referenced in her memo) before trial. Ansari's lawyer made the following additional statements during closing to misdirect the jury's attention from the real question:

- "He never even listened to the phone calls.  He never got Ansari's phone and searched it, see if there's any talk between Ansari and Sandoval."  *Id*. at PageID.4993.
- Jimenez "[d]idn't download Barley's phone, didn't download Figueroa's phone.  Didn't even mention… Sandoval one time to Ansari. None of these Detective 101 things which would have connected the dots to Sandoval were done by him."  *Id*. at PageID.4993-4994.
- "The most telling thing is this.  As soon as Ansari was arrested, he stopped looking at Sandoval."  *Id*. at PageID.4994.

On rebuttal, Ansari's attorney returned to this once more:

"Remember Jimenez said, 'I would have charged Sandoval but there was no hard evidence.' You don't find evidence when you don't look. He intended not to look. He directed the whole thing away from Sandoval for his own self-interest. You don't find hard evidence if you don't look for it. And he's a trained detective, a

veteran detective, knows exactly what he's doing, knows exactly
how to find evidence."

*Id*., PageID.5075.

The district court's failure to use the verdict form proposed by Jimenez,

allowed the jury to consider alleged actions and inactions by Jimenez during his

investigation as a basis for liability. As courts have repeatedly held, there is no

right to an adequate police investigation. *Mitchell v. McNeil*, 487 F.3d 374, 378

(6th Cir. 2007). Failing to use Jimenez's proposed verdict form constituted

prejudicial error.

In denying Jimenez's motion for new trial based on this, the district

court asserted that because the verdict form specified that the "jury needed to

find that Defendant violated "Plaintiff, Alexandre Ansari's, Fourteenth

Amendment right" it "did not allow for the type of finding that Defendant

feared – that is, a finding of liability based merely on Defendant's

investigatory failures." Opinion and Order, RE 189, PageID.5524. This

explanation relies on a tautology. The question is whether the jury was

advised and understood that the only way that Ansari's Fourteenth

Amendment rights could have been violated in this case was if it found that

Jimenez had suppressed or failed to disclose exculpatory or impeaching

evidence. Telling them they had to find that Jimenez violated Ansari's

Fourteenth Amendment rights, without explaining the only way he could have done so here, was not enough. If the jury had understood that a failure to investigate could *not* be the basis for a Fourteenth Amendment claim against Jimenez, then the district court's analysis would be correct. But jurors are not constitutional scholars.

An ambiguous, potentially erroneous instruction requires reversal if there is a reasonable likelihood that the jury applied the instruction improperly. *Estelle v. McGuire*, 502 U.S. 62, 71-73 (1991); *Coe v. Bell*, 161 F.3d 320, 329 (6th Cir. 1998). Here, Ansari's counsel repeatedly questioned witnesses and made arguments about Jimenez's purportedly inadequate investigation. This coupled with the highly abstract and ambiguous jury verdict form allowed the jury to believe that Jimenez violated Ansari's Fourteenth Amendment rights by failing to adequately investigate his guilt or innocence. Thus, a new trial is required.

**D.    THE DISTRICT COURT ERRONEOUSLY REFUSED TO INSTRUCT THE JURY THAT ATTORNEY CONTACT WITH WITNESSES IS NOT WRONG**

The district court refused to grant a new trial, accusing Jimenez's trial counsel of falsely claiming that the parties had stipulated to an instruction on attorney contact with witnesses. Opinion, RE 189, PageID.5524-5525. But the inaccurate statements about Jimenez's trial counsel in the district court's

opinion only underscores the need for a new trial. Contrary to the district court's statement, Ansari's lawyer and Jimenez's trial counsel did stipulate to a jury instruction about attorney contact with witnesses:

> "Witness Who Has Been Interviewed by an Attorney - It has been brought out that an attorney, or a representative of an attorney, has talked with a witness. There is nothing wrong with an attorney, or a representative of an attorney, talking with a witness for the purpose of learning what the witness knows about the case and what testimony the witness will give."

Ansari's lawyer filed the joint stipulated instructions.

But despite the stipulation, the district court refused to give the instruction. During the trial, Ansari's counsel and the prosecutor told the jury that Jimenez's counsel had improperly contacted Tusar after her deposition to discuss her testimony. Ansari's counsel accused Jimenez's trial counsel of violating Michigan Rule of Professional Conduct "4.2." 2/12/24 Tr, RE 171, PageID.4550. Jimenz's counsel pointed out that Ansari's lawyer had contacted several witnesses, including Ansari's criminal defense attorney, Gerald Karafa, and DEA agent, Craig Michelin. She asked the district court to give the jury instruction on a "witness who has been interviewed by an attorney" and for a curative instruction. 2/15/24 Tr, RE 174, PageID.4972; PageID.4973. But the district court refused to do so. Particularly after Ansari's lawyer accused Jimenez's lawyer of violating her professional ethical obligations before the

jury, the instruction was imperative. Without it, the jury would likely have concluded that Jimenez's lawyer had engaged in wrongful conduct in trying to defend him, an erroneous belief created by Ansari's lawyer's statement and then confirmed when no instruction was given. This was highly prejudicial to Jimenez.

## E. ANSARI'S LAWYER'S IMPROPER ARGUMENT DURING CLOSING DENIED JIMENEZ A FAIR TRIAL

A verdict may be set aside if there is a reasonable probability that the verdict was influenced by the improper argument. *Bridgeport Music, Inc. v. Justin Combs Pub.,* 507 F.3d 470, 478 (6th Cir. 2007). "Counsel should not introduce extraneous matters before a jury or, by questions or remarks, endeavor to bring before it unrelated subjects, and, where there is a reasonable probability that the verdict of a jury has been influenced by such conduct, it should be set aside." *Twachtman v. Connelly*, 106 F.2d 501, 508-509 (6th Cir. 1939). In *Eagan v. CSX Transp., Inc.*, 271 F.Supp.993 (E.D. Mich. 2033), this Court concluded that plaintiff's counsel's closing and rebuttal arguments extended beyond the bounds of civility and propriety, resulting in prejudice to the defendant.

During closing argument here, Ansari's counsel showed a photograph of headstones in Arlington Nation Cemetery to the jury, referred to soldiers who

died protecting constitutional rights and referred to his own father who he claimed was a veteran. He picked up and displayed a folded American flag to the jury while doing so. 2/15/24 Tr, RE 174, PageID.5009, lines 7-17. Through tears, he referred to his own son, who he claimed was a police officer, and said that he tells his son "(D)on't ever get so jaded that you treat people like a nobody." *Id.* at PageID.5078, lines 21-22. These references and display of emotion by counsel were highly prejudicial and denied Jimenez a fair trial.

In seeking damages, Ansari's lawyer said, "I could be cavalier and say if this didn't happen to Alex Ansari, it can happen to any one of us." 2/15/24 Tr, RE 174, PageID.5008. Despite an objection from Jimenez's trial counsel, he urged the jury to put themselves in Ansari's place:

> $20,720,000.  And if somebody's in the jury room saying that's a hell of a lot of money, I want you to look at it from this perspective, ladies and gentlemen.  There's the door, and under – on the other side of that door it is a ton of money.  But to go through that door, you're going to go to prison, you're going to live in hell in seven-by-ten feet 21 hours a day with murderers, rapists, pedophiles, and you may never get out, you may never get out, you will die in prison most likely.  But if you do get out, if you do get out, it will be six and a half years from now and all this money is going to be in front of you.  Who would open the door? What reasonable person would ever open that door? And you're going to have people say, "I wouldn't open that door for all the money in the world."  So a juror just needs – if somebody says that, that's just know – you know how expensive the harm is.  I wouldn't do that for all the money in the word.

*Id.* at PageID.5013. These appeals were a flagrant violation of the "golden rule" argument that this Court has repeatedly held to be improper. *Michigan First Credit Union v. Cumis Insurance Society, Inc.*, 641 F.3d 240, 249 (6th Cir. 2011)( "Those circuits that have considered use of 'Golden Rule' arguments have 'universally condemned' them as improper because they invite decision based on bias and prejudice rather than consideration of facts"). And unlike the example, Ansari's experienced trial counsel did not make on the offhand single reference but made it a major theme. This Court has also held that arguments inviting a jury to send a message to the defendant are disfavored. *United States v. Modena*, 302 F.3d 626, 635 (6th Cir. 2002).

Ansari's lawyer sought an emotionally-driven damages award and urged the jurors to send a message to other police departments and officers:

> Ladies and gentlemen, your verdict is going to ring loud and clear. There are going to be police departments and police officers all around listening, looking, wondering what the verdict is going to be. So how do you make a verdict that's loud enough and big enough?

*Id.* at PageID.5014. Although the district court sustained Jimenez's counsel's objection, the damage was done. And even after the district court sustained the objection, Ansari's lawyer returned to his improper "golden rule" argument, now explicitly attacking Jimenez's counsel. He told the jury to ask

what she would take to be in prison, implicitly urging them to reject her arguments as hypocritical:

> And let me tell you, 'cuz I can already tell, Ms. Crittendon is going to come in here and say that's absurd. Somebody ask hypothetically when you're in the jury room, "What would Ms. Crittendon take to open that door?"

*Id.* Again, the district court sustained the objection. But again, the damage was done. Ansari's counsel also told the jury on rebuttal that if the evidence had been disclosed to the prosecutor, Ansari "wouldn't have been charged because when they dismissed the case, they never retried him now that all this evidence came out." *Id.* at PageID.5073. Again, the district court sustained an objection, but the damage was done.

These impermissible and disfavored arguments were deliberately presented to the jury by Ansari's experienced trial counsel to obtain an inflated and emotional verdict for his client. The failure to require a new trial would not only leave intact a verdict obtained by impermissible tactics, but it would invite this and other lawyers to engage in the same tactics. Because of the improper arguments of Ansari's counsel and the failure of the Court to narrow the issue for the jury to whether Jimenez provided information to Tusar, the jury's verdict was entirely based on the emotionally charged and vague issue of whether Ansari's constitutional rights were violated –

potentially because Jimenez failed to adequately investigate his guilt or innocence. And because the court precluded any evidence that would demonstrate Ansari was guilty of murder, the jury's attention was improperly skewed toward assuming he was innocent and assessing whether Jimenez did a proper investigation. Because that was not the issue at trial, Jimenez was irreparably prejudiced, and reversal is necessary.

### RELIEF

Wherefore Defendant-Appellant Moises Jimenez respectfully requests this Court to reverse the district court, hold that he is not liable for violating Plaintiff-Appellee Ansari's constitutional rights, and grant judgment in his behalf, or in the alternative, remand for a new trial, and also grant Jimenez all relief warranted in law and equity.

Respectfully submitted,

PLUNKETT COONEY

By: */s/Mary Massaron*
MARY MASSARON (P43885)
COURTNEY LAVENDER (P85614)
Attorneys for Appellant
38505 Woodward Avenue, Suite 100
Bloomfield Hills, MI 48304
(313) 983-4801
mmassaron@plunkettcooney.com
Dated: February 21, 2025          clavender@plunkettcooney.com

## CERTIFICATE OF COMPLIANCE

STATE OF MICHIGAN    )
                     ) SS.
COUNTY OF OAKLAND  )

MARY MASSARON, being first duly sworn, certifies and states the following:

1.      She is a shareholder with the firm Plunkett Cooney, and is in principal charge of the above-captioned cause for the purpose of preparing the attached Brief on Appeal;

2.      The brief prepared by her office complies with the type-volume limitation;

3.      Plunkett Cooney relies on the word count of their word processing system used to prepare the brief, using Cambria size 14 font; and

4.      The word processing system counts the number of words in the reply brief as 14,362.

Dated:  February 21, 2025            */s/Mary Massaron*
                                     MARY MASSARON

**CERTIFICATE OF SERVICE**

MARY MASSARON, attorney with the law firm of PLUNKETT COONEY, being first duly sworn, deposes and says that on the 21st day of February, 2025, she caused a copy of this document to be served upon all parties of record, and that such service was made electronically upon each counsel of record so registered with the United States Court of Appeals for the Sixth Circuit, and via U.S. Mail to any counsel not registered to receive electronic copies from the court, by enclosing same in a sealed envelope with first class postage fully prepaid, addressed to the above, and depositing said envelope and its contents in a receptacle for the U.S. Mail.

PLUNKETT COONEY

By:     */s/Mary Massaron*
          MARY MASSARON (P43885)
          Attorney for Appellant
          38505 Woodward Avenue, Suite 100
          Bloomfield Hills, MI  48304
          (313) 983-4801
          mmassaron@plunkettcooney.com

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| Description of Entry No. | Record Entry No. | PageID # |
|---|---|---|
| Complaint – 03/18/20 | 1 | 1-18 |
| Defendants' Moises Jimenez and City of Detroit's Answer to Complaint – 06/01/20 | 6 | 27-48 |
| Defendant, Moises Jimenez's, Motion for Summary Judgment – 04/12/22 | 59 | 866-1148 |
| Opinion and Order Granting in Part and Denying in Part Summary Judgment Motion [59] – 08/23/22 | 70 | 1812-1832 |
| Defendant, Moises Jimenez's, Motion for Partial Reconsideration of Opinion and Order Denying in Part Defendant's Motion for Summary Judgment [70] – 09/01/22 | 71 | 1833-1863 |
| Order Denying Motion for Reconsideration [71] – 09/09/22 | 72 | 1864-1867 |
| Defendant, Moises Jimenez's, Motion to Dismiss for Lack of Subject Matter Jurisdiction – 09/28/22 | 75 | 1872-1906 |
| Stipulated Order Vacating Convictions and Sentences, Dismiss Charges and Ordering Defendant Released from the Michigan Department of Corrections | 75-1 | 1907-1909 |
| Third Circuit Register of Actions | 75-2 | 1910-1914 |
| Order Appointing Counsel for Petitioner | 75-3 | 1915-1917 |
| Stipulation and Order Dismissing Alexandre Ansari's Petition for a Writ of Habeas Corpus | 75-4 | 1918-1922 |
| USDC Civil Docket for Ansari's Petition for Habeas Corpus | 75-5 | 1923-1927 |
| Order Denying Motion to Dismiss [75] – 10/31/22 | 80 | 1974-1978 |

| | | |
|---|---|---|
| Motion for Reconsideration of Order Denying Motion to Dismiss [80] – 11/04/22 | 81 | 1979-1995 |
| Order Denying Motion for Reconsideration [81] – 11/09/22 | 83 | 1998-2001 |
| Plaintiff's Motion in Limine No. 4 to Exclude Evidence and Attorney Argument About Prosecutor Erika Tusar's October 3, 2013, Memo Relating to DEA Evidence Regarding Jose Sandoval – 06/06/23 | 91 | 2102-2123 |
| Defendant Moises Jimenez's Response to Plaintiff's Motion in Limine No. 4 to Exclude Evidence and Attorney Argument About Prosecutor Tusar's October 3, 2013 Memo Relating to DEA Evidence Regarding Jose Sandoval – 06/14/23 | 114 | 2726-2740 |
| Omnibus Opinion – Resolving Defendant MIL – 06/20/23 | 128 | 2903-2917 |
| Opinion and Order Granting Motions in Limine [88] and [102] and Denying Motions in Limine [87] and [90] – 06/20/23 | 129 | 2918-2923 |
| Omnibus Opinion – Resolving Plaintiff MIL – 06/20/23 | 130 | 2924-2933 |
| Order Granting Plaintiff's and Defendant's Oral Motions for a Mistrial – 06/30/23 | 132 | 2956-2965 |
| Defendant Moises Jimenez's Trial Brief – 01/31/24 | 149 | 3511-3536 |
| Jury Instructions – 02/02/24 | 153 | 3658-3719 |
| Order on Wayne County Prosecutor's Office File – 02/15/24 | 158 | 3737-3738 |
| Transcript – Jury Trial 02/08/24 | 169 | 3934-4156 |
| Transcript – Jury Trial 02/09/24 | 170 | 4157-4387 |
| Transcript – Jury Trial 02/12/24 | 171 | 4388-4632 |
| Transcript – Jury Trial 02/13/24 | 173 | 4633-4772 |

| | | |
|---|---|---|
| Transcript – Jury Trial 02/15/24 | 174 | 4966-5107 |
| Order Denying Oral Motion for Directed Verdict by Defendant – 04/02/24 | 178 | 5132-5140 |
| Judgment (Against Defendant Moises Jimenez) – 04/02/24 | 179 | 5141-5142 |
| Defendant Moises Jimenez's Motion for New Trial – 04/10/24 | 180 | 5143-5181 |
| Defendant Moises Jimenez's Renewed Motion for Judgment as a Matter of Law Pursuant to Federal Rule of Civil Procedure 50(b) – 04/10/24 | 181 | 5182-5304 |
| Opinion and Order Denying Motion for New Trial [180] and Denying Renewed Motion for Judgment as a Matter of Law [181] – 08/19/24 | 189 | 5512-5534 |
| Notice of Appeal – 08/30/24 | 190 | 5535-5536 |

# REPRODUCTION OF STATUTES, RULES, AND REGULATIONS UNDER FRAP 29(F)

| Description | Bates Number |
|---|---|
| 42 U.S.C.A. Section 1983 | 001a |
| U.S. Constitution Amendment IV | 002a |
| U.S. Constitution Amendment XIV | 003a-004a |
| M.C.L. 600.4385 | 005a |
| M.C.R. 6.502 | 006a-008a |

60315388.1