**No. 24-1743**

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

ALEXANDRE ANSARI,

Plaintiff-Appellee,

v.

MOISES JIMENEZ,

Defendant-Appellant.

On Appeal from the United States District Court
for the Eastern District of Michigan
Case No. 2:20-cv-10719, Hon. Stephen J. Murphy, III

**DEFENDANT-APPELLANT MOISES JIMENEZ'S
MOTION FOR STAY OF MANDATE PENDING PETITION FOR WRIT OF CERTIORARI**

PLUNKETT COONEY

By:   MARY MASSARON (P43885)
COURTNEY LAVENDER (P85614)
Attorneys for Appellant
38505 Woodward Avenue, Suite 100
Bloomfield Hills, MI  48304
(313) 983-4801
mmassaron@plunkettcooney.com
clavender@plunkettcooney.com

TABLE OF CONTENTS

**Page**

Defendant-Appellant Moises Jimenez's Motion For Stay of Mandate Pending Petition For Writ of Certiorari.................................................................... 1

Index of Authorities ...........................................................................................ii

Grounds for the Motion..................................................................................... 1

Relief Sought ...................................................................................................... 4

Background .......................................................................................................... 4

Legal Argument in Support of Stay .................................................................. 8

    I.   The Panel Decision Raises Substantial Questions, As To Which The Supreme Court Is Likely To Grant Certiorari......................................... 8

    II.  The Supreme Court Is Likely To Reverse The District Court's Judgment Because Jimenez Is Entitled To Qualified Immunity And Because He Did Not Violate His *Brady/Giglio* Duties ................................... 13

    III. Denial Of A Stay Will Cause Irreparable Harm Through Expenditure Of Judicial And Litigant Resources That Would Be Unnecessary In The Event That A Writ Of Certiorari Is Granted And Through Inadequate Future Legal Remedies.......................................... 16

Relief Requested................................................................................................ 19

Certificate Of Compliance................................................................................ 1

Certificate Of Service ....................................................................................... 2

i

# INDEX OF AUTHORITIES

<div align="right">

**Page**

</div>

**CASES**

*AIG Aviation, Inc. v. Boorom Aircraft, Inc.,*
142 F.3d 431 (table) 1998 WL 69013 (6th. Cir. 1998) ........................................ 18

*Brady v. Maryland,*
373 U.S. 83 (1963) ................................................ 1, 5, 7, 9, 10, 13, 14, 15

*Carroll v. Carman,*
574 U.S. 13 (2014) ................................................................ 1, 9, 10

*City of Escondido v. Emmons,*
139 S. Ct. 500 (2019) ...................................................................... 10

*D.C. v. Wesby,*
583 U.S. 48 (2018) .......................................................................... 10

*Deckert v. Independence Shares Corporation,*
311 U.S. 282 (1940) ........................................................................ 18

*Doan v. Carter,*
548 F.3d 449 (6th. Cir. 2008) ........................................................... 15

*Ford v. Cnty. of Grand Traverse,*
535 F.3d 483 (6th Cir. 2008) ...................................................... 3, 12, 14

*Heck v. Humphrey,*
512 U.S. 477 (1994) ................................................................... 5, 6, 7

*Hollingsworth v. Perry,*
558 U.S. 183 (2010) .......................................................................... 8

*Kisela v. Hughes,*
138 S. Ct. 1148 (2018) ..................................................................... 10

*Kusens v. Pascal Co.,*
448 F.3d 349 (6th Cir. 2006) ...................................................... 2, 12, 14

*Mullenix v. Luna,*
577 U.S. 7 (2015) ............................................................................ 10

*Phillip Morris USA Inc. v. Scott,*
561 U.S. 1301 (2010) ....................................................................... 16

*Reichle v. Howards,*
566 U.S. 658 (2012) ...................................................................... 1, 9

</div>

62622758.1

*Rivas-Villegas v. Cortesluna,*
  142 S. Ct. 4 (2021).......................................................................................... 2, 9

*Rockport Pharmacy, Inc. v. Digital Simplistics, Inc.,*
  53 F.3d 195 (8th. Cir.1995)............................................................................ 12, 14

*Sockwell v. Comm'r, Alabama Dep't of Corr.,*
  No. 23-13321, 2025 WL 2741439 (11th. Cir. Sept. 23, 2025)........................... 16

*Sykes v. Anderson,*
  625 F.3d 294 (6th. Cir. 2010).......................................................................... 12, 14

*Tocco v. Tocco,*
  409 F. Supp. 2d 816 (E.D. Mich. 2005)............................................................... 18

*United States v. Traficant,*
  368 F.3d 646 (6th. Cir. 2004).............................................................................. 11

*White v. Plappert,*
  137 F.4th 579 (6th. Cir. 2025) ................................................................... 8, 15, 16

*Wilson v. Layne,*
  526 U.S. 603 (1999)........................................................................................... 14

**<u>STATUTES</u>**

42 U.S.C. § 1983.............................................................................................. 4, 10

42 U.S.C. § 1988.................................................................................................. 4

**<u>RULES</u>**

6 Cir. R. 41(c)...................................................................................................... 1

Fed. R. App. P. 41(b) ........................................................................................... 1

Fed. R. App. P. 41(d)(1)........................................................................................ 8

Fed. R. App. P. 41(d)(2) .................................................................................... 1, 4

Fed. R. Civ. P. 50(a) .............................................................. 2, 3, 9, 11, 12, 13, 14

Fed. R. Civ. P. 50(b) ................................................................. 2, 3, 9, 11, 12, 13

<u>**MOTION FOR STAY**</u>

Defendant-Appellant Moises Jimenez ("Appellant" or "Jimenez"), by and through his attorneys, Plunkett Cooney, under Fed. R. App. P. 41(d)(2) and 6 Cir. R. 41(c), moves to stay the issuance of the mandate in this matter pending the filing of Jimenez's Petition for Writ of Certiorari with the Supreme Court of the United States seeking reversal, vacation, or modification of the panel decision issued on May 14, 2026. Unless stayed, this Court's mandate will issue on or after June 4, 2026. Fed. R. App. P. 41(b); 6 Cir. I.O.P. 41(a).

**GROUNDS FOR THE MOTION**

Granting of stay is required because Defendant-Appellant Moises Jimenez plans to file a timely Petition for a Writ of Certiorari, which will present a couple substantial questions and because there is good cause for a stay. Good cause is demonstrated by the following:

(a) This Court decided an important question of federal law in a published opinion that should be decided by the Supreme Court: whether Jimenez is entitled to qualified immunity on Plaintiff-Appellee Alexandre Ansari's *Brady v. Maryland* claim. The Supreme Court has recently placed considerable doubt on whether Circuit precedent can define clearly established law for qualified immunity purposes. *Reichle v. Howards,* 566 U.S. 658, 655-656 (2012); *Carroll v. Carman*, 574 U.S. 13 (2014); *Rivas-Villegas v.*

*Cortesluna*, 142 S. Ct. 4 (2021).  Although the Supreme Court has not squarely held that Supreme Court precedent is required to meet this prong of qualified immunity, it has strongly suggested as much.  And no Supreme Court decision has ever held that police offices bear independent *Brady* obligations or that the evidence here – uncorroborated rumors, anonymous tips, and collateral information only tenuously connected to the criminal case – falls within the scope of any disclosure obligation.  Defendant-Appellant believes this Petition for Certiorari will present substantial arguments that the Supreme Court will hear to clarify qualified immunity standards and a police officer's obligations under *Brady/Giglio* in the face of its recent decisions and the novelty of this issue.

(b)     This Court's determination that certain qualified immunity arguments were forfeited during trial represents a highly technical and strict reading of Rule 50(a) and 50(b)  preservation requirements that conflicts with long-standing caselaw recognizing that legal arguments are honed and refined throughout the litigation process, including during and after trial.  In line with those principles, this Circuit has stated that technical precision is not required when stating the grounds for a pre-verdict motion.  See, e.g., *Kusens v. Pascal Co.*, 448 F.3d 349, 361 (6th Cir. 2006) ("In stating the grounds in the required pre-verdict motion, technical precision is not necessary.") (internal citations

2

omitted); *Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 493 (6th Cir. 2008) (stating that where a Rule 50(a) motion provides the court and opposing counsel with notice of "any deficiencies in the opposing party's case prior to sending it to the jury...courts usually take a liberal view of what constitutes a pre-verdict motion sufficient to support a post-verdict motion.") (quoting *Kusens*, 448 F.3d at 361). This Court's decision places undue burden on litigant's counsel and sets an impossible standard for trial lawyers to meet considering the time constraints they are faced with at trial. The Supreme Court should determine the appropriate notice standard for a Rule 50(a) and Rule 50(b) motion to cure any confusion about the appropriate avenue advocates must take to protect post-trial defenses and rights of parties.

(c) Execution of the $10,000,000 judgment will cause irreparable harm, as Jimenez could be subjected to garnishment, liens, asset seizure and other collection mechanisms. If the judgment is satisfied or partially satisfied by the time the Supreme Court either grants certiorari or reverses the district court's judgment, recovering those funds would be extraordinarily difficult, if not impossible, rendering any potential reversal hollow. The purpose of the stay of the mandate pending the writ of certiorari is to stay the status quo so that any potential review of the Supreme Court is not merely academic.

<div align="center">3</div>

## RELIEF SOUGHT

Jimenez requests a stay in accordance with F.R.A.P. 41. Issuance of the mandate would be stayed pending Jimenez's filing of one or more Petitions for Writ of Certiorari with the Supreme Court of the United States. The stay would not exceed 90 days, unless the period is extended for good cause or unless Jimenez files a petition for the writ and notifies the Clerk of court in writing of that filing within the stay period. Then, the stay would continue until the Supreme Court's final disposition, either of the petition or, if the petition is granted, of the issues presented for review.

## BACKGROUND

Alexandre Ansari sued the City of Detroit and its police officer, Moises Jimenez, under 42 U.S.C. § 1983 and § 1988 for claimed violations of his constitutional rights under the United States Constitution's Fourth and Fourteenth Amendments. Complaint, RE 1, PageID.1-18. Ansari alleged that he would not have been arrested, bound over, and convicted at trial but for Jimenez's purported failure to disclose information about an alleged hit ordered by reputed drug dealer, Jose Sandoval. *Id.* at PageID.14.

Litigation proceeded for several years with hotly contested motions concerning discovery and for summary judgment. See, e.g., Jimenez's Motion for Summary Judgment, RE 59, PageID.866-1148. The district court granted

4

Jimenez's motion for summary judgment on "the malicious prosecution claim and all but one Brady claim." Opinion and Order, RE 70, PageID.1519. Jimenez sought reconsideration, which the district court denied. Motion for Partial Reconsideration, RE 71, PageID.1833-1863; Order, RE 72, PageID.1864-1867.

Jimenez later moved to dismiss based on *Heck v. Humphrey*, 512 U.S. 477 (1994). Motion to Dismiss for Lack of Subject Matter Jurisdiction, RE 75, PageID.1872-1972. The district court denied this motion. Order, RE 80, PageID.1974-1978. It agreed that Ansari's claims "would necessarily challenge his State court conviction and sentence." *Id.* at PageID.1977. But the district court concluded the second prong was not satisfied because the state court's conviction and sentence had been vacated. *Id.* at PageID.1977. Jimenez sought reconsideration. Motion for Reconsideration, RE 81, PageID.1979-1995. The district court clarified its earlier ruling citing "the general principle of federalism," but denied the motion. Order, RE 83, PageID.1998-2001.

Then, the parties prepared for trial. Both parties filed motions in limine, which were decided in a series of omnibus opinions. Omnibus Opinion, RE 128, PageID.2903-2917; Opinion and Order, RE 129, PageID.2918-2923;

62622758.1

Omnibus Opinion, RE 130, PageID.2924-2933.  After several days of trial, the

district court granted a mistrial.  Order, RE 132, PageID.2956-2965.

Additional proceedings and a second trial took place.  Jimenez argued

that the order vacating Ansari's conviction was improperly entered in

violation of Michigan court rules and procedures.  Jimenez Trial Brief, RE 149,

PageID.3511-3536.  Jimenez again argued that Ansari failed to satisfy *Heck v.*

*Humphrey*'s threshold requirement to show his conviction was lawfully

vacated.  *Id.* at PageID.3520-3527.  Jimenez also contended that the verdict

form should ask "Did Defendant, Moises Jimenez, violate Plaintiff, Alexandre

Ansari's, Fourteenth Amendment right to due process by withholding

exculpatory evidence from the prosecutor?"  *Id.* at PageID.3527.  Jimenez also

pointed out several evidentiary concerns and improper concerns made by

Ansari's lawyer during the first trial.  *Id.* at PageID.3527-3534.  The district

court issued another order addressing evidentiary matters. Amended Order

on Evidentiary Matters, RE 158, PageID.3739-3740.

The district court reiterated that testimony about Ansari's guilt or

innocence should be excluded, allowed Jimenez to use additional portions of

Ansari's criminal defense lawyer's deposition at trial, and ruled that the

Wayne County Prosecutor's Office file would be received in evidence as self-

authenticating under Federal Rule of Evidence 902(11) if Jimenez laid a

<div align="center">6</div>

proper foundation.  *Id.*  The district court later refused to admit the file but allowed the parties to argue about it and present inferences they wished the jury to make.  *Id.* at PageID.3739-3740.

At the close of Ansari's case-in-chief, Jimenez orally moved for judgment as a matter of law, which the district court denied.  Order Denying Oral Motion for Directed Verdict by Defendant, RE 178, PageID.5132-5140 citing 2/13/24 Tr, RE 173, PageID.4876-4878.  Judgment was later entered in Ansari's favor and against Jimenez for $10,000,000.00 in compensatory damages.  Judgment, RE 179, PageID.5141.

Jimenez renewed his motion for judgment as a matter of law, Jimenez's Renewed Motion for Judgment as a Matter of Law, RE 181, PageID.5182-5304, and his motion for new trial.  Jimenez's Motion for New Trial, RE 180, PageID.5143-5181.  The district court denied both motions.  Opinion and Order, RE 189, PageID.5512-5534.  The district court rejected Jimenez's arguments, concluding that *Heck* did not bar Ansari's claims, holding that the *Brady* evidence was exculpatory, and rejecting Ansari's argument that it was not impeaching.  *Id.* at PageID.5517-5518.  The district court rejected Jimenez's argument that he was protected with qualified immunity, citing its pretrial decision. *Id.* at PageID.5519-5521.

<div align="center">7</div>

The district court also denied Jimenez's motion for a new trial. *Id.* at PageID.5521-5533.  In doing so, the district court made gratuitous and inaccurate attacks on Jimenez's trial counsel that infected its denial of a new trial.  *Id.* at PageID.5521-5534.

Jimenez appealed the judgment to this Court. Notice of Appeal, RE 190, PageID.5535-5536.  On May 14, 2026, a panel of this Court issued its opinion affirming the district court's judgment.

## LEGAL ARGUMENT IN SUPPORT OF STAY

## I.    THE PANEL DECISION RAISES SUBSTANTIAL QUESTIONS, AS TO WHICH THE SUPREME COURT IS LIKELY TO GRANT CERTIORARI

Under F.R.A.P. 41(d)(1), the party moving for a stay of this Court's mandate must "show that the petition would present a substantial question and that there is good cause for a stay."  This Circuit has interpreted that Rule to "mirror[] the Supreme Court's own test for granting stays pending the filing of a petition for certiorari[.]" *White v. Plappert*, 137 F.4th 579, 581 (6th. Cir. 2025).  A movant must show: (1) a "reasonable probability" that certiorari will be granted; (2) a "fair prospect that a majority of the Court will vote to reverse the judgment below;" and (3) "a likelihood that irreparable harm will result from the denial of a stay."  *Id*. (quoting  *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010)).

62622758.1

Here, there are at least three substantial questions to be answered: (1) whether anything less than Supreme Court precedent may define clearly established law for qualified immunity purposes; (2) whether police officers bear independent *Brady* obligations or that the evidence here – uncorroborated rumors, anonymous tips, and collateral information only tenuously connected to the criminal case – falls within the scope of any disclosure obligation; and (3) whether Fed. R. Civ. P. 50(a) and 50(b) require strict compliance.  Certiorari is likely to be granted because of the substantial and far-reaching implications of the principles underlying this case and because the Supreme Court will likely take the opportunity to clarify the standards for the clearly established prong of qualified immunity and notice requirements for Rule 50(a) and 50(b) motions.

To the first point, this case presents unresolved questions of federal law that the Supreme Court has repeatedly flagged: whether circuit court precedent alone can define clearly established law for purposes of qualified immunity.  See, e.g., *Reichle v. Howards,* 566 U.S. 658, 655-656 (2012); *Carroll v. Carman*, 574 U.S. 13 (2014); *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4 (2021). This Court recognized in its opinion that the Supreme Court has questioned whether circuit precedent is enough but has not yet squarely decided the issue.  The Supreme Court also acknowledged as much in *D.C. v. Wesby,* 583

9

U.S. 48, 66 n. 8 (2018) ("We have not yet decided what precedents—other than our own—qualify as controlling authority for purposes of qualified immunity.") (internal citation omitted). But the Supreme Court continues to express skepticism on the issue at an increasingly frequent rate, as exhibited by at least six decisions it has issued over the past decade. See, e.g., *Carroll v. Carman*, 574 U.S. 13 (2014); *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018); *City of Escondido v. Emmons*, 139 S. Ct. 500, 503–04 (2019); and *Mullenix v. Luna*, 577 U.S. 7, 15 (2015).

This case presents an ideal vehicle for resolution of the question because this Court's decision turned squarely on application of its own circuit precedent to find that a police officer's *Brady*-related duties were clearly established since 1990. There are no Supreme Court cases to support that holding and were no Sixth Circuit decisions to support it at the time. Thus, one of the questions Jimenez intends to present to the Supreme Court is whether reliance on out-of-circuit and circuit precedent alone can define a clearly established right for qualified immunity purposes. And the question is substantial because it has far-reaching consequences, as qualified immunity questions affect virtually every §1983 case involving law enforcement officers, and the same analysis applies to every circuit. If circuit precedent alone can define clearly established law, officers in different circuits will face different

10

standards of liability for the same conduct. And if police officers have independent *Brady* duties, or if those duties apply to the type of evidence at issue here, the scope of potential civil liability for individual officers exponentially increases. Thus, the Supreme Court will likely grant certiorari to ensure cohesion among the circuits and certainty in the administration of justice.

Turning to the second point, this Court's decision included a strict reading of Rule 50(a) and 50(b), as it found some of Jimenez's qualified immunity-related arguments waived because they were not raised in his Rule 50(a) motion. This strict interpretation of Rule 50 is a substantial question that the Supreme Court will likely want to address, as this Court's decision represents a highly technical and strict reading of Rule 50(a) and 50(b) preservation requirements that conflict with long-standing caselaw recognizing that legal arguments are honed and refined throughout the litigation process, including during and after trial. *United States v. Traficant*, 368 F.3d 646, 650 (6th. Cir. 2004) ("[W]e allow defendants to refine their original arguments for the litigation's later stages.") (internal citation omitted).

In line with that principle, this Circuit has stated that technical precision is not required when stating the grounds for a pre-verdict motion. See, e.g.,

11

*Kusens v. Pascal Co.*, 448 F.3d 349, 361 (6th. Cir. 2006) ("In stating the grounds in the required pre-verdict motion, technical precision is not necessary.") (internal citations omitted); *Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 493 (6th. Cir. 2008) (stating that where a Rule 50(a) motion provides the court and opposing counsel with notice of "any deficiencies in the opposing party's case prior to sending it to the jury…courts usually take a liberal view of what constitutes a pre-verdict motion sufficient to support a post-verdict motion.") (quoting *Kusens*, 448 F.3d at 361). Litigants need only raise a claim or defense in a Rule 50(a) motion to provide the requisite notice. They have never been required to identify every argument in support of that claim. See *Sykes v. Anderson*, 625 F.3d 294, 304 (6th. Cir. 2010) (insinuating that had the defendants "mentioned" qualified immunity or even "referenced" "clearly established law" or "objectively unreasonable actions," then they would have met Rule 50(a)'s notice requirement because all those terms "might have put the court and the Plaintiffs on notice as to the Defendants' qualified-immunity claim."); *Rockport Pharmacy, Inc. v. Digital Simplistics, Inc.,* 53 F.3d 195, 197 (8th. Cir.1995) (finding that the defendant's broad argument in a Rule 50(a) motion to exclude the use of a contractual breach to establish a duty of care was sufficient to preserve its more refined argument in a Rule 50(b) motion that state law prohibited tort liability for purely economic losses).

62622758.1

This Court's decision places undue burden on litigants' counsel and sets an impossible standard for trial lawyers to meet considering the time constraints they are faced with at trial. The Supreme Court will thus likely want to clarify the appropriate notice standard for Rule 50(a) and Rule 50(b) motions to cure any confusion about the appropriate avenue advocates must take to protect post-trial defenses and rights of parties. Thus, there are several substantial questions as to which the Supreme Court is likely to grant certiorari. This Court should grant a stay of execution of the mandate pending Jimenez's writ of certiorari to the Supreme Court.

## II. THE SUPREME COURT IS LIKELY TO REVERSE THE DISTRICT COURT'S JUDGMENT BECAUSE JIMENEZ IS ENTITLED TO QUALIFIED IMMUNITY AND BECAUSE HE DID NOT VIOLATE HIS *BRADY/GIGLIO* DUTIES

If the Supreme Court grants Certiorari, it is likely to reverse the district court's judgment for several reasons. First, Jimenez is entitled to qualified immunity, as no Supreme Court authority would have told every reasonable officer that failing to disclose information about a drug dealer who supposedly ordered a hit on the victim, giving a motive for the killing but not exculpating the criminal defendant, or failing to disclose uncorroborated rumors or anonymous tips that were not likely to have been admissible or resulted in a different verdict at the criminal trial violated Ansari's clearly established constitutional rights under *Brady v. Maryland*, 373 U.S. 83 (1963). No such

13

case has been identified throughout these proceedings.  And even under this Circuit's more relaxed standard, there was no Sixth Circuit decision or a "a robust 'consensus of cases of persuasive authority'" (*Wilson v. Layne*, 526 U.S. 603, 617 (1999)) to alert Jimenez that he was violating Ansari's due process right to a fair trial when Ansari's lawyer knew about Sandoval, and the information was inculpatory merely showing a motive for Ansari's conduct, and the information was remote and only tenuously connected to Ansari's trial by uncorroborated rumors and anonymous tips.

Second, no clearly established law would have told Jimenez that uncorroborated rumors and anonymous tips even constituted *Brady* evidence requiring disclosure.  To begin, the Supreme Court will likely find that the arguments about whether the type of evidence at issue here count as a *Brady* violation were not waived, given the spirit of Rule 50, the time and pressure constraints litigants are under when they are required to make Rule 50(a) motions, and that courts have found that identifying theories satisfies Rule 50's preservation requirements.  The Rule has never required a litigant to make every argument related to that theory to preserve those arguments on appeal.  *Ford*, 535 F.3d at 493; *Kusens*, 448 F.3d at 361; *Sykes*, 625 F.3d at 304;  *Rockport Pharmacy, Inc.,* 53 F.3d 195, 197.  Indeed, this Court recognized that Jimenez argued in the trial court that he raised qualified immunity issues

14

in his Rule 50(a) motion and argued the clearly established prong. Thus, the Supreme Court will likely find that Jimenez can advance all his qualified immunity arguments on appeal.

The Supreme Court will likely reverse the district court's judgment because Jimenez's argument has merit – there is no clearly established law, whether it be Supreme Court or circuit precedent, that alerted Jimenez that he was required to turn over evidence about uncorroborated rumors and anonymous tips to satisfy his *Brady* obligations. That evidence was not material, exculpatory, or impeaching, nor could Jimenez be reasonably expected to believe that it was. In finding otherwise, the district court (and this Court) defined Jimenez's obligations too broadly, contrary to the Supreme Court's repeated admonitions. *White v. Pauly*, 580 U.S. 73, 137 S. Ct. 548, 552 (2017) ("As this Court explained decades ago, the clearly established law must be 'particularized' to the facts of the case. Otherwise, '[p]laintiffs would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.' ") (internal citations omitted).

The underlying evidence would not have changed the result of the proceeding. *Doan v. Carter*, 548 F.3d 449, 459-460 (6th. Cir. 2008). And It was not exculpatory but inculpatory since it would not have shown Ansari's

<div align="center">15</div>

innocence; it would only have provided a possible motive. Surviving victims identified Ansari as the shooter and knew about Sandoval because of prior altercations with him. The prosecutor conceded that the charges against Ansari would have proceeded anyway based on the victims' identification. As a result, Jimenez was entitled to judgment in his favor.

For all these reasons, the Supreme Court is likely to reverse the district court's decision. Thus, this Court should enter a stay of the mandate pending Jimenez's writ of certiorari to the Supreme Court.

## III.   DENIAL OF A STAY WILL CAUSE IRREPARABLE HARM THROUGH EXPENDITURE OF JUDICIAL AND LITIGANT RESOURCES THAT WOULD BE UNNECESSARY IN THE EVENT THAT A WRIT OF CERTIORARI IS GRANTED AND THROUGH INADEQUATE FUTURE LEGAL REMEDIES

Rule 41's good cause requirement is intertwined with a showing of irreparable harm. *White*, 137 F.4th at 581; See also *Sockwell v. Comm'r, Alabama Dep't of Corr.,* No. 23-13321, 2025 WL 2741439, at *1 (11th. Cir. Sept. 23, 2025) (quoting *Phillip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1302 (2010)) (To establish good cause for a stay, "there must be a likelihood of irreparable harm if the judgment is not stayed.").

Here, granting a stay would produce benefits for the litigants and the district court. Ansari has already suggested his intention to conduct a creditors examination. It is thus clear that Ansari intends on immediately

16

taking actions necessary to recover the $10,000,000 judgment against Jimenez. Should the Supreme Court grant certiorari and find for Jimenez, the expenditures and efforts of the parties and the district court would be wasted. Put differently, all the efforts may be rendered unnecessary if the Supreme Court grants certiorari. And since this case has already been stayed because of the prior appeals process, granting a further stay pending the Supreme Court's action on certiorari will affect a far more realistic use of party and judicial time under these circumstances.

Execution of the $10,000,000 judgment will also cause irreparable harm because the judgment was rendered against Jimenez personally, not as a municipal entity or a defendant with the financial resources of a government or corporation. And the amount of the judgment is catastrophic. Jimenez could thus be subjected to garnishment, liens, asset seizure and other collection mechanisms. If the judgment is satisfied or partially satisfied by the time the Supreme Court either grants certiorari or reverses the district court's judgment, recovering those funds would be extraordinarily difficult, if not impossible, given the judgment is between two individuals, not two institutional parties. If Ansari spends or dissipates the judgment proceeds during the pendency of certiorari proceedings, Jimenez will have no realistic prospect of recovering the funds.

17

Monetary harm becomes irreparable when restitution is illusory.  See, e.g., *Tocco v. Tocco*, 409 F. Supp. 2d 816, 831 (E.D. Mich. 2005)(finding that alleged monetary harm was irreparable because there was "a strong possibility that corrective relief will not be available to Plaintiffs in the ordinary course of litigation absent an injunction[.]");  *Deckert v. Independence Shares Corporation,* 311 U.S. 282, 290–291 (1940)  (finding legal remedies to be inadequate in the face of alleged monetary harm when "there were allegations that [the defendant] was insolvent and its assets in danger of dissipation or depletion."); *AIG Aviation, Inc. v. Boorom Aircraft, Inc.*, 142 F.3d 431 (table) 1998 WL 69013, p *2 (6th. Cir. 1998) (finding irreparable harm where "there was a risk" that, by the end of litigation, the defendant "would dispose of all the money" that was the subject of a final verdict for the plaintiff).  Here, there is a risk that Jimenez would not be able to recover any funds potentially wrongfully obtained by Ansari during the pendency of these proceedings if a stay of execution of the mandate is not granted, making the potential harm irreparable.  *Tocco*, 409 F. Supp. 2d at 831; *Deckert,* 311 U.S. at 290–291; *AIG Aviation* , 1998 WL 69013 at *2.

The purpose of the stay of the mandate pending the writ of certiorari is to stay the status quo.  That ensures that any potential review of the Supreme Court is not merely academic.  Given the substantial verdict, Ansari's apparent

<div align="center">18</div>

intention to immediately collect, and the substantial issues Jimenez intends to raise in the forthcoming writ, preserving the status quo is of the utmost importance.  Indeed, it is necessary to prevent irreparable injury.

## RELIEF REQUESTED

For the reasons set forth above, Defendant-Appellant Moises Jimenez, requests this Honorable Court grant its motion for stay.

Respectfully submitted,

PLUNKETT COONEY

By:     */s/Mary Massaron*
MARY MASSARON (P43885)
COURTNEY LAVENDER (P85614)
Attorneys for Appellant
38505 Woodward Avenue, Suite 100
Bloomfield Hills, MI  48304
(313) 983-4801
mmassaron@plunkettcooney.com
clavender@plunkettcooney.com

Dated:  May 29, 2026

19

**CERTIFICATE OF COMPLIANCE**

STATE OF MICHIGAN )
                                    ) SS.
COUNTY OF OAKLAND )

MARY MASSARON, being first duly sworn, certifies and states the following:

1. She is a shareholder with the firm Plunkett Cooney, and is in principal charge of the above-captioned cause for the purpose of preparing the attached Motion for Stay of Mandate;

2. The motion prepared by her office complies with the type-volume limitation;

3. Plunkett Cooney relies on the word count of their word processing system used to prepare the brief, using Cambria size 14 font; and

4. The word processing system counts the number of words in the motion as 4,016.

Dated:  May 29, 2026                          */s/Mary Massaron*
                                           MARY MASSARON

**CERTIFICATE OF SERVICE**

MARY MASSARON, attorney with the law firm of PLUNKETT COONEY, being first duly sworn, deposes and says that on May 29, 2026, she caused a copy of this document to be served upon all parties of record, and that such service was made electronically upon each counsel of record so registered with the United States Court of Appeals for the Sixth Circuit, and via U.S. Mail to any counsel not registered to receive electronic copies from the court, by enclosing same in a sealed envelope with first class postage fully prepaid, addressed to the above, and depositing said envelope and its contents in a receptacle for the U.S. Mail.

PLUNKETT COONEY

By: */s/Mary Massaron*
MARY MASSARON (P43885)
Attorney for Appellant
38505 Woodward Avenue, Suite 100
Bloomfield Hills, MI 48304
(313) 983-4801
mmassaron@plunkettcooney.com

62622758.1